## Barret v. Ivison.

(Decided Jan. 24, 1933.)

(Common Pleas Branch, Third Division).

244

ROBERT L. PAGE and L. D. GREENE for appellant.
CARROLL & McELWAIN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Thomas L. Barret brought this suit against Albert Ivison to recover $10,934.50, the alleged market value of a double-deck cruiser, which he had loaned to Ivison, and which was destroyed by fire. At the conclusion of the evidence for plaintiff, the trial court directed a verdict in favor of defendant. Plaintiff appeals.

The action was based on gross negligence and also on an express contract consisting of two letters, hereinafter set out, and which, it is claimed, made Ivison liable as an insurer.

The facts are these: Mr. Barret in his own name, and in the name of the Barret Company, was engaged in selling cruisers in the city of Louisville. In the year 1929, he sold Ivison a single-deck cruiser. Later on

they negotiated for the sale of a larger cruiser, but the deal was never consummated. During the latter part of August, 1930, Ivison, who wished to take his wife and a party of friends up the Ohio and Kentucky rivers on a week-end trip, requested the loan of a double-deck cruiser. Following that request, Barret, by his secretary, wrote Ivison the following letter, dated August 28, 1930, and signed by the Barret Company:

"Confirming our telephone conversation relative to the use of the Matthews Double Cabin Cruiser, for a cruise by you, on coming Saturday, Sunday and Monday.

"Naturally, Mr. Barret was rather reluctant about allowing the Cruiser to be placed in the hands of others, since he is unable to be along on account of his physical condition; however, on account of his confidence in you, he is willing to turn this Cruiser over to you, for this trip.

"So that the boat can be kept clean and in the best possible shape, we would like to have our Porter, Charles Dorsey, accompany you on this cruise; and you can rest assured that he will attend strictly to his own business, and, at the same time, do whatever he thinks necessary. If this is entirely agreeable to you, please advise. Of course, Dorsey is on a weekly payroll and we will pay him while he is away on this cruise.

"As our Barret will be unable to accompany you on this trip, and as we are turning this Cruiser over to you, we are taking it for granted that you will be willing to assume any responsibility for any possible damages to this cruiser or contents, which may occur, while same is in your possession. As Mr. Barret has turned this matter over to this office for handling, we are merely mentioning this, as a matter of form and business policy, knowing that you will take care of same as if it were your own Boat.

"We are going to have our Porter, Charles Dorsey, go up to the Louisville Boat Club early tomorrow (Friday) morning, to put the Boat in proper and best possible shape, and you can send your representative up there any time Friday morning to take inventory and so that you can de-

termine just what else you will need to take along for your cruise, for your own personal comforts and conveniences.

"So that we will have a definite understanding (as long as Mr. Barret is unable to personally discuss this matter with you at this time), we are handing you this letter in duplicate, and, if everything is entirely agreeable, we will appreciate if you will please O. K. and return the duplicate copy, if this meets with your full approval.

"Assuring you that it is our desire to serve and co-operate with you at all times, and hoping you will call on us if there is anything that this office can do to make your cruise a pleasant and delightful one.

"Sincerely yours,
"In Dup. WJS/S            The Barret Co."

This letter was delivered by messenger to Ivison's place of business Thursday morning, August 28, 1930, and later at his residence. On the same day appellant's secretary authorized the delivery of the boat to Ivison. On August 29, 1930, Ivison wrote Mr. Barret the following letter addressed to him at 112 South Second street, Louisville:

"As explained to your representative, Mr. Steinhauer, over the phone my secretary forwarded your letter to my home, as it arrived yesterday afternoon after I had left the office for the day. Unfortunately, I left the letter at home this morning with, of course, its duplicate copy. Therefore, I am unable to forward same to you, signed, as required. However, you may rest assured that your boat will receive the very best of care and will be returned to you at least as clean as it was when received, and we will do our best to protect any and all property therein included.

"I want you to know that I appreciate very much your attitude in allowing me to take this boat for the trip, and while we would have been pleased to have had you with us, still, I presume that is impossible on account of your illness. I will be very glad to advise you when I return just what I found as to the various accomplishments and accommodations of your Matthews Cruiser.

"I might say that I had an inquiry when I got back into the wharf yesterday evening. I think the name of the party is a Mr. Sparks and he seemed to be quite interested. He left, after looking over the boat very carefully, the thought that he would like to have a ride in it some afternoon. Should he get in touch with you, any arrangement you may make will be satisfactory to me.

"Wishing you a speedy recovery and with kind personal regards, I remain,
"Yours very truly,
"Alb. Ivison."

This letter was not received until Saturday morning. Friday afternoon August 29th H. B. Cassin, then in the employ of Mr. Barret, but at the time he testified a resident engineer of the highway department, ran the cruiser from Mr. Barret's dock to the Pastime Boat Club for Mr. Ivison's use, and at that time the mechanical condition of the boat was perfect. He knew this because he ran the boat. He did not go over the machinery and equipment, because it was not necessary. The instruments indicated that everything was working in perfect order. About 10 o'clock Saturday morning August 30th, the party left Louisville. Some time Sunday morning the motor ceased to run, and Mr. Ivison had the cruiser towed to Frankfort, a distance of about 12 miles. At that point Ivison purchased a quantity of gasoline, which was delivered by Scotty Perkins. Ivison expressed a desire to get a man to fix the motor, and Perkins referred him to S. E. Hoover, who checked over the ignition, and made some adjustments that enabled the boat to run. Hoover was a mechanic and had worked on motors and tractors, but had had no experience with marine motors. The boat then proceeded down the river to the locks. In the meantime Thomas H. Spence, porter and cook on the boat, started to prepare dinner. The stove he was cooking on was leaking. Even going up they had a leak in the stove and were burning alcohol. He noticed that there was a faint odor, probably gasoline and alcohol mixed. He first noticed the odor when they got in the locks. It might have been a slight odor of gasoline. He believed that Mr. Ivison said something about the gasoline odor. There was an explosion, and the boat caught fire. He was the first to jump off, and Mr. Ivison was

248

the next. He got off because the boat was burning too fast. The explosion knocked him down, and instantly there was a mass of flame from the motor back to the aft part of the boat. His legs, hair, and neck were burned. There was a fire extinguisher not far from the pilot wheel, but the flames were all around it. Inside of two minutes the entire part of the aft of the boat was in flames. About seven minutes elapsed between the time he and Mr. Ivison got off and the time the rest of them got off. After Mr. Ivison got off, he called back to Mr. Webber to do something with the fire extinguisher, but Mr. Webber said he could not do anything, it was burning so fast. After the explosion, the fire came so quickly that the only thing he could do was to get off. According to Fred Hassempflug, who took a picture of the boat, there was a flash of fire, and the darkey and another man jumped out. The boat drifted down the river for about 15 minutes before the other people got off. There was further evidence that there was a sea cock on the boat which could have been opened and the hull flooded.

It is first insisted that the court erred in refusing to permit the witness Steinhauer, Mr. Barret's secretary, to testify that on the morning of August 29th Ivison called him over the telephone and said that he had forgotten the original and duplicate copy of the letter; that he had left his office and his stenographer had sent the original and copy to his residence, and he had forgotten them; that that was the reason he was unable to sign them, but he would sign them and deliver them to the witness. The argument is that this evidence tended to show an oral acceptance of the terms stated in appellant's letter. There might be some merit in this contention if appellant had relied on an oral, or even implied, acceptance, but that is not the case. He pleaded and relied on the two letters as constituting the agreement between the parties, and in the very nature of things could not show by oral testimony a contract different from the one pleaded.

Appellant insists that, instead of instructing the jury to find for appellee, the court should have directed a verdict in his favor. The argument is that his letter imposed upon appellee absolute liability, that the cruiser was delivered to appellee before his letter reached appellant, and that appellee therefore took

possession of the cruiser subject to the terms of appellant's letter. It is further argued that even appellee's letter fairly construed shows that he consented to the conditions imposed by appellant's letter. It is true that a bailee may, by express contract, become liable as an insurer, Federal Chemical Co. v. A. L. Green & Sons, 110 S. W. 859, 33 Ky. Law Rep. 671; but, as pointed out in Sturm v. Boker, 150 U. S. 312, 14 S. Ct. 99, 37 L. Ed. 1093, such liability can only be imposed upon him by a contract clearly expressing his assumption of the risk of destruction, or his liability for the loss. In the light of this rule, let us examine the language of appellant's letter, which, it is claimed, imposed upon appellee absolute liability. It reads as follows:

> "As our Barret will be unable to accompany you on this trip, and as we are turning this Cruiser over to you, we are taking it for granted that you will be willing to assume any responsibility for any possible damages to this cruiser or contents, which may occur, while same is in your possession. As Mr. Barret has turned this matter over to this office for handling, we are merely mentioning this, as a matter of form and business policy, knowing that you will take care of same as if it were your own Boat."

In the first place, the letter does not declare that appellant would hold appellee absolutely responsible for any possible damages. It merely reads, "We are taking it for granted that you will be willing to assume any responsibility for any possible damages to this cruiser or contents, which may occur while same is in your possession." But this is not all. The letter goes on and says, "As Mr. Barret has turned this matter over to this office for handling, we are merely mentioning this as a matter of form and business policy, knowing that you will take care of same as if it were your own Boat." This language plainly indicates that the prior reference to appellee's responsibility for any possible damages was only a matter of form and business policy, which, coupled with the concluding words, "Knowing that you will take care of same as if it were your own Boat," makes the paragraph susceptible to the construction that appellee's responsibility was to be measured by such care. We are therefore con-

strained to the view that the letter was not sufficiently clear to impose absolute liability on appellee. Not only so, but there were other facts bearing on the question of absolute liability. Appellant's letter was a proposal, and called for a response. In his response, which was dated August 29th, appellee, after referring to the fact that he left appellant's letter at the office, and was therefore unable to forward same signed as required, added:

> "However, you may rest assured that your boat will receive the very best of care, and will be returned to you at least as clean as it was when it was received, and we will do our best to protect any and all property therein included."

Clearly this was not an assent to that portion of the letter taking it for granted that he would be willing to assume full responsibility, but was a counter proposal modifying and construing the terms of the letter, and indicating the precise liability which appellee was willing to assume. Not only was this letter written the day before appellee was to have the use of the boat, but it was delivered at appellant's place of business an hour or more before appellee and his party left on the trip. In addition to that, as before stated, appellant pleaded and relied on the two letters as constituting the contract between the parties, and is not in a position to say that his rights depend on extraneous matters. Even if there be doubt as to the proposition that appellant's letter was not sufficiently clear to impose absolute responsibility, it cannot be doubted that the two letters, which are the basis of the suit, do not impose such liability.

In the next place, it is argued that, when appellant proved that the boat was delivered in good condition, and was not returned, he made out a prima facie case, and it then devolved on appellee to go forward with his evidence and show that the loss was not due to any negligence on his part. If appellant had merely pleaded, and confined his evidence to, the delivery of the boat in good condition and appellee's failure to return it, a different question would be presented. However, that is not the case. He pleaded that the boat and its contents were totally destroyed by reason of appellee's gross negligence. In the circumstances, not only was the burden on appellant to show negligence, De Grau

v. Wilson (D. C.) 17 F. 698, affirmed in (C. C.) 22 F. 560; Stewart v. Stone, 127 N. Y. 500, 28 N. E. 595, 14 L. R. A. 215; Smith-Hager Ice Co. v. Reid, 228 Ky. 489, 15 S. W. (2d) 504; but he undertook the burden, introduced numerous witnesses, and fully developed the case. In short, he did for appellee all that appellee could have done for himself without adding his own testimony. Therefore he was not entitled to go to the jury if the evidence as to how, when, and under what circumstances the fire occurred was not sufficient to show negligence on the part of appellee. Stone v. Case, 34 Okl. 5, 124 P. 960, 43 L. R. A. (N. S.) 1168.

It is the rule that, where the bailment is for the sole benefit of the bailee, he is bound to exercise extraordinary care, and is liable for slight neglect. Kennedy v. Ashcraft, 4 Bush, 530. It is also the rule that, where the facts are undisputed, and but one reasonable conclusion can be drawn therefrom by ordinarily sensible men, the question of negligence is for the court and not for the jury, and this rule is peculiarly applicable to a case of bailment. Kelly v. White, 17 B. Mon. 124. We shall examine the evidence in the light of these rules. The first ground of negligence relied on is when the knock developed in the motor appellee did not communicate with appellant and ask for instructions. Motors frequently get out of order, and are easily adjusted, and we hardly think it was incumbent on appellee to telephone to appellant. Doubtless, if he had done so, appellant would have advised him to procure a mechanic, which appellee subsequently did.

The next claim is that appellee was negligent in procuring an incompetent mechanic. It was Sunday when the accident occurred. The mechanic was recommended by the man who furnished the gasoline. There was nothing in the situation to suggest that he was incompetent. He undertook the work, found the ignition all right, and made some adjustments. After this was done, the motor operated all right, and the boat proceeded on its journey. In the circumstances, appellee had the right to conclude that the work had been satisfactorily performed.

Another contention is that the cook's evidence that the coal oil stove was leaking and that there was an odor of gasoline was sufficient to take the case to the jury. The cook described the odor of gasoline as "faint," and naturally that was to be expected after

the tank had been filled and the motor began to operate. There was no showing that the coal oil stove leaked to any appreciable extent, or of any facts from which it could be inferred that appellee knew of the leak, or could have known of it by the exercise of extraordinary care. Nor was there any evidence that the leaking stove contributed in any way to the accident.

The act of negligence most seriously pressed was the failure of appellee to use the fire extinguisher or to open the sea cock, which would have flooded the hull. The argument is that several minutes elapsed between the explosion and the time the boat was consumed, and that in the meantime the fire extinguisher and sea cock might have been used. On this question the evidence of Spence, the cook, is as follows: The explosion occurred in the hull, and was of such violence as to knock him down. Within two minutes the entire craft from the motor to the rear of the boat was in flames. The flames were all around the fire extinguisher, and it was impossible to reach it. There was further evidence that after appellee got off he called to Mr. Webber to use the fire extinguisher, and Webber answered he could not reach it. Of course, as the sea cock was located in the hull where the explosion took place, there was no possibility of reaching it. In the circumstances, the fact that either the fire extinguisher or sea cock was not used was not a failure on appellee's part to exercise extraordinary care.

On the whole we agree with the trial court that the evidence did not show that the fire, which destroyed the boat, was due to even the slightest neglect on the part of appellee, and was therefore not sufficient to take the case to the jury.

Judgment affirmed.