## Glens Falls Insurance Co. v. Hall.

(Decided Feb. 22, 1935.)

(As Modified on Denial of Rehearing April 26, 1935.)

26

FRANK M. DRAKE and WM. A. MINIHAN for appellant.

HARRY B. MILLER, I. JAY MILLER and B. L. KESSINGER for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

In July, 1932, appellee George W. Hall purchased what he claimed was a 1931 model Studebaker President Eight automobile from the Hodges Motor Company of East Peoria, Ill., paying as he says $1,800 for the car; $200 in cash, $200 the trade in value of his old car, and fourteen slot machines at an agreed valuation of $100 each. The Hodges Company then executed to him a bill of sale. He says he did not record this bill of sale in Illinois because business took him to Toledo, Ohio, some time in August of the same year, and he was compelled to buy an Ohio license on the ground that he was using the car in conducting his business, and in procuring the license he was required to and did file his bill of sale in Toledo.

The appellee went to Lexington, Ky., some time in September, 1932, and in October being desirous of borrowing some money made application to the Guaranty Finance Company and offered his car as a pledge for the anticipated loan. He was advised that the loan could be negotiated, but one of the requirements was that the car should be insured. It is in evidence that the Loan Company directed appellee to Mr. Respass, an agent of the appellant, and on October 18, 1932, the insurance company through Mr. Respass issued him its policy of insurance on his car to the amount of $1,200. On October 20, he obtained a loan of $390 from the Guaranty Company, giving the company a mortgage on the car.

On November 1, 1932, about 9 or 9:30 p. m., appellee was driving the car on the Lexington-Nicholasville road. Some distance from Lexington the car caught fire and burned to such an extent that it seems agreed that there was a total loss. Appellee then made claim on his policy for the loss; the company failed to pay and in January, 1933, he filed suit praying for judgment on his policy to the full amount.

Appellee first answered by way of a general denial, but later by amended answer, specifically pleaded nonliability because it was alleged that appellee had represented to the agent of appellant that the car was new, that it was a 1931 model, and that appellee had paid $2,290 for same, all of which statements were alleged to be untrue and known so to be, and that said misstatements were of material nature. The company further pleaded that appellee had no title because the car was one which had been stolen from its rightful owner, a Mr. Hannifin of Chicago. The affirmative allegations of the answer were traversed.

Upon a submission of the case the jury returned a verdict in favor of appellee for the full amount sued for, which was $1,200, the face of the policy.

The appellant contends that the court erred in failing to give a peremptory instruction in favor of the company, on the ground that it had sufficiently proven that appellee had made misrepresentations in obtaining the policy, and had shown conclusively that the appellee had no title to the car. It is contended that the court erred in overruling the motion for a new trial on the following complaints: That the verdict was not sustained by the evidence; that the court should have sustained appellant's motion for a continuance; improper argument of counsel for appellee; and the refusal of the court to permit Smith, an insurance adjuster, to be present with counsel during trial, after a separation of witnesses.

A discussion of the proof offered will serve to dispose of the first two complaints of appellant.

As said above, the appellee claims to have bought the car in question from the Hodges Motor Company in July. The description taken from the bill of sale and filed in the record is as follows: "One President 8, Studebaker Sedan, 1931 Model, painted blue color. Serial #6018444, Motor No. 18282." In the certificate of registration (Ohio) the numbers are the same, except the word "factory" is used instead of "serial" and the letters F. E. appear before the numerals 18282.

It is admitted that the possession of the car and the bill of sale is prima facie evidence of title, therefore the burden of proving no title would rest with the

party denying title, and the state of facts upon which appellant claims that the car was stolen presents a rather peculiar situation.

Mr. Aubrey Cason, manager of the Capitol City Auto Company, New Orleans, La., testified by way of deposition that on September 12, 1929, his company purchased from the Studebaker Corporation several cars, among which was a Studebaker President Eight Brougham, which bore serial No. 6018444, engine No. 18232. Mr. Cason further deposed that on December 30, 1929, his company sold and delivered this car to George M. Broaphy of Chicago. He attaches to his deposition a bill showing the sale of the car to Broaphy, on the date above mentioned; the bill showing the sale of "1 Studebaker President 135 #Brougham S-6018444-M 18232-$2585.00."

Broaphy's deposition was not taken, but R. E. Hannifin of 5200 Blackstone avenue, Chicago, deposes that Broaphy prior to March 6, 1932, transferred the car to him. He files an undated photostatic copy of a writing which states: "All my right title and interest in Studebaker President 8, Sedan Serial #F. E. 18232, Motor #6018444 is vested in R. E. Hannifin. George M. Broaphy."

Hannifin then testifies that on March 6, 1932, at 5 or 5:30 p. m. he left his car in front of the Blackstone Hotel in Chicago, and when he returned at 6:30 the car was gone. He says that he had it insured against theft, with the Federal Insurance Company, and that on May 5 the company adjusted the loss by paying him $1,400, whereupon he assigned all his title and interest to the Insurance Company, and that at no time did he sell or assign the car to any other person. Johnson, agent of the company, says that when he learned of the loss he made report thereof to the company's attorneys, who had an investigation made, and the company paid the loss as above stated. He does not go into details as to what the report showed as a result of the investigation, but says the loss was paid on account of the theft of the car.

To further complicate matters with relation to the denial of the ownership, before the trial was begun appellant was permitted to introduce affidavits as to what absent witnesses would say. It was shown that Sam-

uel Lochs, 1732 Fifty-Second street, New York City, in the latter part of 1929 purchased from the Brewster Garage a new Studebaker President Eight Brougham, bearing factory No. 6018400, engine No. 18282, and that he still owned and was driving the car. This brought his possession down to May 5, 1933.

There was also an affidavit to the effect that a person whose name was not then available would, if present, swear that as custodian of the Studebaker Sales Corporation, he knew that the car, described in the affidavit. as to what Sachs would testify, was sold to Sachs in the latter part of 1929, and that no other Studebaker car was sold bearing these numbers.

It was further shown by affidavit that an unnamed person, if present, would say that the Federal Insurance Company had paid the Hannifin loss in May, 1932, and that Hannifin had transferred title to the company, which title rested in the company, and further that they had no reason to believe that the Hannifin car had been found or was in the possession of Hall until May 2, 1932, and therefore could not have theretofore asserted its title to the car.

It is contended upon the above showing that the court should have instructed the jury peremptorily for the appellant, because it proved conclusively that Hall had in his possession a stolen car, therefore had no insurable title. The evidence with respect to the descriptions of the various cars brought into the case shows the following:

The insured car: Model 1931, Studebaker Broam Sedan, Eight, factory No. 6018444, motor No. F. E. 18282.

Car described, bill of sale to Hall: One President Eight Studebaker Sedan, 1931 model, serial No. 6018444, motor No. 18282.

Car registered by Hall in Ohio: Studebaker Sedan, motor No. F. E. 18282, factory No. 6018444, H. P. 39.2.

Hannifin car: Studebaker President 135# Brougham, serial No. 6018444, motor No. 18232.

Sachs car: President Eight Brougham, factory No. 6018400, engine No. 18282.

Counsel argues that Hall could not have owned the car described by him in obtaining the policy, because Hannifin had lost his car which bore factory No. 601-8444, with the serial No. 18232, and that Sachs had a car which bore the serial No. 18282, though his factory No. was 6018400; his claim further being that the figure "3" in 18232, the number on Hannifin's car, was by a very simple process changed to an "8," and hence the Hannifin car was the one in possession of Hall, which argument would be quite persuasive if it had been shown by proof that the figure "3" (Hannifin's car) had in fact been altered so as to become the numeral "8." It appears from the transcript of testimony that a man by the name of Rothfus, representing the Insurance Company, had examined the burned car, which up until the time of the trial was in a Nicholasville garage. He does not testify.

The court cannot, as is suggested by counsel, take judicial knowledge of the fact that a manufacturer of automobiles would not use similar number on two cars; nor can it take judicial knowledge of the fact that a manufacturer would not place the same factory number on two cars, and at the same time use different engine or motor numbers. These are matters of proof.

A peremptory instruction is correctly given when, admitting every fact shown by complainant's evidence to be true, as well as all reasonable inferences that can be drawn from the proof, establishment of the case has been made. Home Ins. Co. v. C. N. & T. P. Railway Co., 182 Ky. 778, 207 S. W. 487.

It cannot be said here that defendant has established its case, because the proof lacks much in the way of showing that the car of Hall was the one which Hannifin lost in Chicago; it was not of sufficient weight to support a peremptory instruction for defendant at the close of plaintiff's evidence.

When the proof was all in, there were clearly issues of fact which required submission to a jury. Hall's testimony was that he bought a car from the Hodges Company, and he said that there had been no change of numbers after he came into possession, and while this does not prove that there had never been any alteration of the motor or engine number, there is no clear proof that such change had been made.

On the question of misrepresentation of material facts, we must look to the exhibits and to the testimony of Respass and Hall.

The policy contained, under the heading of "Warranted by the Assured," the following:

"Year 1931; Trade Name Studebaker; Type of Body, Broam Sedan; Actual Cost to Assured, $2295.00. No. of Cyls. 8; Factory Number 6018444; Motor Number FE 18282."

It was also stated that the car was new when purchased in October, 1932. Mr. Respass on cross-examination says that he had the bill of sale, and that he went to his book or manual to get information as to the amount he could write on any particular car, and he practically admits that he got the information contained in the policy from the book. Having the year number, he could then get such information from the "little book" as would give the maximum insurance which the car would carry and also the premium. He could not have gotten the cost figures fixed in the policy from the bill of sale, since the cost there was stated to be $800. Nor could he have gotten the motor number "F. E. 18282" from the bill of sale, since the F. E. was not contained in the bill of sale. Hall says with regard to obtaining the policy that he was at the Farmer Company's Garage; he asked Mr. Farmer about some insurance, and Farmer recommended the Respass Insurance Company. Farmer took the bill of sale and called Mr. Respass on the phone and gave him the numbers on it, and Hall states that Respass "looked up the car and told me how much he could get on the car for me," and that Respass wanted him to take $1,400 on the car. He then went to Respass' office and Hall showed him the bill of sale and the license tag, and that they made up the policy from that.

So the testimony as to misrepresentation of alleged material facts, being contradictory in nature, became an issue for the jury.

As to the value of the car: Hall, who said he had traded in automobiles, fixed the value of the car just prior to its destruction at $1,400 to $1,500. Leland Betts, who had never traded in Studebakers, except in one instance, but had bought and sold used cars for three years, fixed the value before the fire to be $1,000

to $1,200. Luther Ford, a car dealer, fixed the value at $450 to $500, and "if 1931 Model $700.00 to $750.00." J. A. Dishman, agent for the Studebaker for four or five years, fixed the fair market value to be $500.

This was an issue of fact to be submitted on proper instructions, and was so submitted. As to the model of the car, there was some testimony by Betts that by reference to the "blue book" the car showed as a 1930 model, but admitted that if it was sold after July 1st it was properly classified or called a 1931 model. The bill of sale from the Hodges Company showed it was a 1931 model. Smith, an adjuster, says that Hall told him that he paid $2,290 cash for the car. Hall denied this statement, and also explained that the $800 appearing in the bill of sale was a mistake.

It seems clear that on all material points there was such a disagreement as to facts that the court could have done no less than pass the case on to the jury under proper instructions, and a survey of the instructions, six in number, show that every issue was properly submitted. In fact, the plaintiff offered no instructions; the court gave Nos. 1 and 2; and the defendant offered the remaining four, and took no exceptions to the instructions given by the court.

Reviewing the contention that the court erred in refusing a continuance on motion of the defendant, the record shows that the petition was filed January 6, 1933, and on March 14, the defendant answered, and on May 5, 1933, an amended answer was filed. On April 22, the case was assigned for trial on May 10, 1933. On May 5, 1933, appellant moved for a continuance of the case and filed an affidavit in which it was set out that defendant had no opportunity theretofore to produce testimony essential to a proper defense. It was stated in affidavit that shortly after commencement of the action certain investigations led to the belief that the automobile in question was a stolen car; that correspondence had been had with the factory manufacturing the car, and with dealers who handled the same, and with persons formerly in possession of the car, and efforts had been made to locate such persons, who were then unknown; that discovery that there were other cars with similar numbers had not been made until the date of the making of the motion. Recitation was also made of the discovery of the car which had been sold

by the Brewster Garage in New York, and that it was the purpose and desire to take depositions with relation to that particular car, and it was said that by the exercise of the utmost diligence it would be impossible to obtain the proof of the facts alleged within the limited time. It was also stressed that on May 2, 1933, counsel for appellant expressed to counsel for appellee a desire to take the deposition of Hall, as if on cross-examination; that counsel for appellee refused to divulge the whereabouts of Hall; that in response to a letter written to counsel for Hall, expressing the intention of taking Hall's deposition on May 4, 1933, at an hour named, Hall failed to present himself. Counter-affidavits were filed, in which it was alleged that counsel for appellant had, in a conversation with counsel for appellee "about three months ago," made known to appellee's counsel that it was the belief of the Insurance Company that the car in question was a stolen car, and that plaintiff had no title. It is also stated that an investigation would be made, and in the course of ten days appellee's counsel would be notified as to whether or not an effort would be made to settle the case, and further that perhaps six weeks prior to May 8, appellee's counsel were told that answer would be filed and the case proceed to trial.

The motion for continuance was overruled on May 5, 1933, with objection and exception. On May 10, 1933, motion for continuance was renewed, based on the ground that the plaintiff failed to appear and give his deposition as if on cross-examination "after notice to counsel for plaintiff that opportunity to take said deposition was desired by defendant," and on this ground relied on affidavits formerly filed. It was also stated that a witness, an employee of the Federal Insurance Company, if present, would give testimony by documentary evidence, showing that title to the car in question was made by Hannifin to the company after payment of theft loss, and to no one else. It was also set out that Sachs, if present, would prove by his testimony that the engine number on Hall's car was fictitious. Affidavit was filed in support of the motion to continue, and it is noted that Walter Johnson, whose deposition appears in the record, was named as the person who would produce the evidence with relation to the transfer of title from Hannifin to the Federal Insurance Company. Upon the filing of this motion accompanied by

affidavits, it was stipulated by the parties that the witnesses would testify as was set out in the stipulation. This agreement covered what it was claimed Sachs would say if present, and that a witness of the Studebaker Corporation would testify that the car bearing factory No. 6018400 and engine No. 18282 was shipped from the factory in the latter part of 1929, and no other car was manufactured bearing these same numbers. These affidavits were admitted. It appears from a reading of the motions and the affidavits in support of same that all facts, which it was suggested might have been procured if continuance had been allowed, were before the court and jury, either by way of deposition or contained in the affidavits. In this state of case, this court could not say that the lower court had abused its discretion in refusing continuance. Section 315 of the Civil Code of Practice first provides the requisites of an affidavit supporting the motion for continuance. The same section then provides that following the filing of affidavits, "if, thereupon, the adverse party will consent that, on the trial, the affidavit shall be read as the deposition of the absent witness, the trial shall not be postponed on account of his absence." It has been held in many cases that it is not an abuse of discretion to deny motion for continuance, where the affidavit as to what the absent witness would say if present is admitted as evidence. Bon Jellico Co. v. Murphy, 161 Ky. 450, 171 S. W. 169; Connecticut Fire Ins. Co. v. Hardin, 168 Ky. 377, 182 S. W. 204.

On the question as to whether the court erred in not granting a continuance because the appellee did not present himself to be subjected as if on cross-examination, it seems that the court's action in this respect is one to be gauged by the rule of discretion. From the affidavits on file it is shown that no effort was made to take Hall's deposition until about May 2, 1933, just a short while before the trial was to be held. The effort was by inquiry made of counsel for appellant as to where Hall could be found, and later by a written notice to counsel to ask that he produce his client so as to be enabled to take his deposition on May 4th. Subsection 8, of section 606 of the Civil Code of Practice provides:

"A party may be examined as if under cross-exami-

nation at the instance of the adverse party, either orally or by deposition as any other witness. * * * "

In the case of Home Ins. Co. of N. Y. v. Crowder, 164 Ky. 792, 176 S. W. 344, the court held that while section 606 of the Civil Code of Practice gives to either party to an action the absolute right to take the deposition of the adverse party, in pursuing such course the party seeking to thus take is to be held to the same rule of diligence which applies in the taking of a deposition of any other witness. Such diligence is not shown in this case. No movement toward the taking of plaintiff's deposition was made at any time throughout the period intervening between the filing of the action and the day of its trial until eight days before the day of trial, and such steps consisted only of an application to plaintiff's attorneys to produce their client for that purpose. No process of any kind was taken out whereby plaintiff was legally requested to appear at any time or place, and the inability to locate him for that purpose was not thus legally demonstrated. Moreover, if it were otherwise, then it would not necessarily follow that the alleged error relied on was an available one to defendant, since plaintiff testified at the trial. Owensboro City Rwy. v. Rowland, 152 Ky. 175, 153 S. W. 206. If defendant, upon the giving of the testimony by plaintiff, desired further time in which to investigate the facts he revealed, and which were not known or could not reasonably have been ascertained, the proper practice required a manifestation thereof to the court, followed by a request for the setting aside of the impaneling of the jury, and a postponement of the trial in order for defendant to have the benefit as so developed. Counsel for appellant complains that improper argument was indulged in by counsel for appelleee, concerning which it was said in substance that the reason Hall did not trace his title to the automobile back to the factory was because he (the plaintiff) did not know his title was being questioned until May 5, when the company made the disclosure by answer filed, and that counsel exhibited the answer with the date of filing on the back thereof to the jury. We do not perceive that this was prejudicial error, at least it is not pointed out wherein the statement used would in any wise unduly influence the jury.

Lastly it is urged that the court erred in refusing

to permit C. A. Smith, an insurance adjuster, to remain in the courtroom at the table with counsel for appellee during the progress of the trial. Smith was a witness for appellee, and a separation of witnesses was ordered on his motion. Counsel for appellant moved the court to allow Smith to remain with him during the trial, and the court overruled the motion, to which ruling counsel objected and excepted. Smith as a witness testified that he was not a full-time employee of the defendant, but had been employed as an adjuster in this particular case. It is not shown even in brief wherein the failure to have Smith remain in the courtroom operated to the prejudice of appellant. The ruling on questions of this kind is always in the discretion of the court, and unless it be made to appear that some substantial right has been prejudiced by the ruling, this court will determine, as it does here, that no prejudicial error was committed. Johnson v. Clem, 82 Ky. 84; Boyd v. Com., 194 Ky. 73, 238 S. W. 182.

On the whole case we do not find error of such nature as would justify a reversal of the judgment below.

Judgment affirmed.