## Hopper v. Barren Fork Coal Co.
## R. J. Smith Co. v. Same.

(Decided March 24, 1936.)

B. J. BETHURUM for appellant.

E. L. STEPHENS and STEPHENS & STEELY and H. M. CLINE for appellee.

W. N. FLIPPIN and C. N. HOBSON for appellant.

OPINION OF THE COURT BY JUDGE RICHARDSON— Reversing.

The first-entitled action is to recover damages for personal injuries sustained by the alleged negligence of the Barren Fork Coal Company. The second, to recover damages on the same ground, for the destruction of a truck loaded with merchandise. A perplexing question of practice is presented in both cases.

The actions were tried as one in the circuit court. The trial was completed the last Thursday of the regular term of court. At the conclusion of the argument to the jury of counsel of Orville Hopper and R. J. Smith Company, who resided in an adjoining county, they arranged with a local attorney, not engaged in either case, to report to them the jury's verdict as soon as it was returned to the court. He agreed, but omitted to do so. On the next day, Friday, counsel received information that the jury's verdict was adverse to their clients; also, that the judge of the court had returned to his home in an adjoining county. Counsel for R. J. Smith Company got in communication by telephone with the judge of the court and imparted to him the information that his client and Hopper desired to file motion and grounds for a new trial. The judge directed him to file the same with the clerk of the court and to have the clerk enter an order on the order book which he

had signed, leaving space above his signature for the clerk to enter such orders as directed by the judge to be entered. On Saturday, within three days of the trial, counsel for Hopper delivered to the clerk of the court the motion and grounds for a new trial, of Hopper and R. J. Smith Company, with the information that the judge of the court had directed the clerk to be informed of his consent for her to enter the order filing and overruling the motion and grounds, as above indicated, which later was accordingly done.

The Barren Fork Coal Company attacked this order on the ground that it was entered after the court had adjourned, and insists it was therefore void. On the evidence of the parties directed to this issue, the circuit court overruled its application to nullify the order. Whilst the filing of the motion and grounds for a new trial and the entering the order respecting the same may be conceded to be informal, the order was not void.

The Barren Fork Coal Company is here entering a motion to strike from the record the motion and grounds for a new trial, the bill of exceptions, and the evidence. The order filing same being valid, the motion to strike is overruled.

Coming to the merits of the case, the injuries sustained by Hopper for which he sues, and the damage to the truck and the merchandise contained therein, occurred at the same time and place. For this reason our statements and references to the pleadings, the issues formed, the evidence, the instructions of the court, and those offered by the parties will be considered as if Hopper's were the only case under review.

R. J. Smith Company, prior to and at the time Hopper sustained his injuries, was engaged in the wholesale and retail business at Somerset, Ky. It delivered its merchandise to its customers with trucks. Orville Hopper, on the 30th day of October, 1933, was in charge of one of its trucks loaded with merchandise, in McCreary county, Ky., on State Highway No. 27. While operating it over a spur track of the Barren Fork Coal Company, one of its train of cars—consisting of an engine, tender, car loaded with scrap iron, and an empty flat car—collided with the truck,

seriously injuring Hopper, practically demolishing the truck, and destroying the merchandise in it.

To recover damages for the injuries sustained by him, he filed his action in the McCreary circuit court; and to recover damages to the truck and merchandise, R. J. Smith Company filed its suit to recover of the Barren Fork Coal Compaiy.

To present properly and correctly the questions to be determined, it is essential and required that Hopper's cause of action as it is stated in the petition as amended, and R. J. Smith Company's cause of action as it is stated in its petition, the defenses of the Barren Fork Coal Company as contained in its answers, be reviewed herein.

In his original petition Hopper confined his right to recover to specific negligence as alleged therein. Its language is that the company "carelessly and negligently," "while backing its said train of cars over its said spur track," "ran its said train of cars over and upon a motortruck being then and there operated by the plaintiff upon said highway and causing said engine and train of cars to collide with said truck, and as a direct result of the gross negligence of the defendant, its agents, servants and employees in charge of and operating said engine and train of cars, the plaintiff was thrown against and came in contact with said engine and train of cars with great force, receiving thereby a fracture of both legs, etc."

In his amended petition it.is set out that "defendant's said track of railroad crosses State Highway No. 27 in a dense forest, rendering said crossing an unusually dangerous one; that a dense growth of trees, bushes, undergrowth, brush, weeds, and briars were standing and growing in close proximity to said railroad track and in close proximity to said state highway for a considerable distance on both sides of said railroad and on both sides of said state highway, all of which prevented the operatives of said train from seeing the approach of plaintiff to said crossing, and prevented plaintiff from seeing or hearing the train before being struck. Plaintiff says that the defendant was the owner of the land upon which said timber and other obstructions grew; knew of these facts, and knew that said crossing was an unusually

dangerous one, and negligently permitted its right of way on both sides of said track in the vicinity of said crossing * * * to be covered and filled with standing and growing timber, trees, bushes, undergrowth, brush, weeds and briars; that at the time and place complained of * * * its servants and employees in charge of said train negligently failed to give any proper òr reasonable warning to plaintiff of the approach of said train, or to employ any reasonable means to that end; that defendant and those in charge of said train omitted to ring the bell or sound the whistle for a distance of fifty rods from said crossing until it reached same, and negligently failed to have any person upon the end of said train nearest said crossing, * * * and by reason of the gross carelessness and negligence of plaintiff, its agents and servants and employees in charge of said train, it collided with the truck injuring him as set out in the original petition."

R. J. Smith Company's petition as amended sets out the same facts as the basis of its cause of action. In its answer the Barren Fork Coal Company controverted the petition and pleaded contributory negligence.

The evidence of Hopper and R. J. Smith Company, as well as that of the Barren Fork Coal Company, establishes that after those in charge of the train of cars at the time and place Hopper was injured and the truck and merchandise were damaged, sounded the whistle for the crossing, but they failed to, and did not at a distance of at least fifty rods from the place where the railroad crosses the highway, ring the bell or sound the whistle continuously or alternately or at all, until the engine had reached the highway. In lieu of so signaling for the crossing, the fireman was on top of the tender, "hollering," attempting in this manner to warn Hopper of the approach of the train of cars to the crossing. At the time he was so engaged, the engineer in charge of the actual operation of the train, when at least one hundred feet from the crossing, heard the fireman "hollering," and thus received information of the danger from the presence of the train to some one on the highway, whereon Hopper was operating the truck; and with this warning of the presence of danger to

traffic on the highway, the engineer failed to, and did not, ring the bell or sound the whistle, or slow down or stop the train of cars, but proceeded at the rate of three or four miles per hour, with the engine under such control that he could have stopped the train within three to five feet, as he says, on the assumption that whoever might be on the highway and in danger would get out of the way of the approaching train; and thus, himself, avoid injury.

It is admitted by the Barren Fork Coal Company and those in charge of the train that at that time, and at no time previous thereto, was there a railroad signal board, well supported by posts, or otherwise, of any height, or at all, with any letters thereon, indicating the presence of a railroad cross-ing. There were, however, at that time on the high-way on each side of the railroad crossing, highway signs some several hundred feet from the railroad crossing. See section 773, Kentucky Statutes. At the time Hopper sustained his injury, the train was backing at the rate of three or four miles per hour in the direction of, onto and over the highway. Hop-per's truck was traveling at the rate of about thirty miles per hour. The testimony in his and R. J. Smith Company's behalf shows that a space between the highway and the right of way of the Barren Fork Coal Company's track was grown up and obstructed Hopper's view of the railroad track for some distance before he reached the crossing so that he could not see the approaching train, and vice versa. Numer-ically, the evidence of the Barren Fork Coal Company establishes the contrary. If the undergrowth, bushes, saplings, and trees were on the right of way of the railroad track, as described by Hopper's and R. J. Smith Company's witnesses, the railroad company necessarily had actual knowledge thereof prior to, and at the time of, the collision. Hopper and R. J. Smith Company insist that the Barren Fork Coal Company had knowledge of the hazardous nature of the crossing and it was its duty to exercise care commensurate with the danger to travelers on such crossing and was under the duty to exercise greater care than at an ordinary crossing, and they were entitled to an instruction on this theory of the case. Louis-ville & N. R. Co. v. Howser's Adm'r, 201 Ky. 548, 257

S. W. 1010, 36 A. L. R. 327; Louisville & N. R. Co. v. Milliken's Adm'x, 51 S. W. 796, 21 Ky. Law Rep. 489; Louisville & N. R. Co. v. Molloy's Adm'x, 122 Ky. 219, 91 S. W. 685, 28 Ky. Law Rep. 1113; Louisville & N. R. Co. v. Lucas' Adm'r, 98 S. W. 308, 30 Ky. Law Rep. 359; Cox's Adm'r v. Cincinnati N. O. & T. P. R. Co., 238 Ky. 312, 37 S. W. (2d) 859. Though the evidence was conflicting as to the hazardous condition of the crossing and numerically in favor of the Barren Fork Coal Company, Hopper and R. J. Smith Company were entitled to have this issue submitted to the jury. They requested an instruction presenting it, and the court improperly refused to give it.

If the crossing was hazardous or dangerous and much used by the traveling public and such facts were known to those in charge of the train for a reasonable time prior to the happening of the accident, it was their duty, in addition to the ringing the bell, or sounding the whistle, continuously or alternately, fifty rods from the crossing (section 786, Kentucky Statutes), and maintaining a lookout to avoid injuring those using the crossing, to use such other means at their command to avoid injuring those using it, including Hopper and the truck, as, in the exercise of reasonable judgment, an ordinarily prudent person operating the train might consider necessary for that purpose. It was a reciprocal duty of Hopper to take such care for his own safety as a reasonably prudent person ordinarily exercises under similar circumstances in this case, considering the character of the crossing and the obstruction, if any, which prevented him from seeing or hearing the approaching train, if he knew, or by the exercise of ordinary care could have known, that the crossing was dangerous, if it was dangerous, on account of the obstruction, if any, mentioned in the evidence. If the crossing were not dangerous, then it was the duty of those in charge of the train to sound the whistle or ring the bell and maintain the lookout as we have heretofore stated, and it was Hopper's duty only to exercise such care as would be usually expected of an ordinarily prudent person to learn of the approach of the train and keep out of its way, and if he failed to exercise such care, and but for such failure he would not have been injured, then the Barren Fork Coal Company was excused from the liability for his

injury and damage to his truck. Louisville & N. R. Co. v. Ratliff's Adm'r, 260 Ky. 380, 85 S. W. (2d) 1006, 1010. While it was his duty to exercise ordinary care to learn of the approach of the train and keep out of its way for his own safety when approaching the crossing, he was entitled at the same time to rely on those in charge of the train performing their statutory duty to sound the whistle and ring the bell in the manner prescribed by the statute to give him timely warning of its approach to the crossing. As we said in the Ratliff Case:

> "The law recognizes the thoughtlessness of human beings when, as members of the traveling public, they approach and use a railroad crossing of the character of that here involved, and for their protection the statute exacts of the company, or those in charge of its trains, the imperative duty to give the crossing signals prescribed by it, and accords to the members of the traveling public the right to rely thereon, when using such crossing, exercising at the same time that degree of care ordinarily prudent persons usually exercise under like or similar circumstances."

And where a member of the traveling public when approaching a railroad crossing, out of sheer hardihood or recklessness, places himself in a position of peril, he is not outside the pale and the protection of the humanitarian doctrine and is entitled to invoke it in such case. Mullins v. Cincinnati, N. & C. R. Co., 253 Ky. 156, 68 S. W. (2d) 790. However much the negligence of Hopper, if any, may have contributed to his injury, this would not excuse the Barren Fork Coal Company for its train of cars injuring him, if those in charge of it, after discovering his peril, could have avoided injuring him by the exercise of ordinary care. Louisville & N. R. Co. v. Lowe, 118 Ky. 260, 273, 80 S. W. 768, 25 Ky. Law Rep. 2317, 65 L. R. A. 122; Doll v. Louisville R. Co., 138 Ky. 486, 128 S. W. 344; Illinois Cent. R. Co. v. Pierce's Adm'x, 175 Ky. 488, 493, 194 S. W. 534, L. R. A. 1917D, 890; Louisville R. Co. v. Broaddus' Adm'r, 180 Ky. 298, 307, 202 S. W. 654; Ross v. Louisville Taxicab Co., 202 Ky. 828, 261 S. W. 590; Illinois Cent. R. Co. v. Evans, 170 Ky. 536, 186 S. W. 173. It was the duty of those in charge of the train on discovering his peril to avoid injuring him,

if within the time and by the exercise of ordinary care they could have done so, in the use of the means at their command, although he was guilty of negligence, either in not having his truck under control or operating it at an excessive rate of speed, or otherwise. Fulton Towboat Co. v. Pendergrass, 15 Ky. Law Rep. 208; Otis Elevator Co. v. Wilson, 147 Ky. 676, 145 S. W. 391; Knecht v. Buckshorn, 233 Ky. 329, 25 S. W. (2d) 727; Lieberman v. McLaughlin, 233 Ky. 763, 26 S. W. (2d) 753; Peak v. Arnett, 233 Ky. 756, 26 S. W. (2d) 1035; Louisville & N. R. Co. v. Cornett's Adm'r, 237 Ky. 131, 35 S. W. (2d) 10; Justice's Adm'r v. Chesapeake & O. R. Co., 244 Ky. 168, 50 S. W. (2d) 531; Mullins v. Cincinnati, N. & C. R. Co., 253 Ky. 156, 68 S. W. (2d) 790.

The test in every case, without regard as to how the plaintiff came in peril, is: Did the defendant, or those in charge of the instrumentality causing his injury or death, see, or by due care could have seen, the plaintiff's peril, in time to have prevented injuring him, and negligently failed to avoid doing so? If so, the defendant is liable.

The court by instruction A erroneously imposed the duty on Hopper to exercise ordinary care to "prevent," as therein set out, the collision of the truck with the train of cars. Another instruction improperly defined his duties respecting his operating the truck at a rate of speed not exceeding twenty miles an hour. Manifestly, it was given under the authority of subsection 4 of section 2739g-51, Kentucky Statutes. So much of subsection 4 of section 2739g-51 as prescribes the rate of speed for the operation of trucks was repealed by section 7 of chapter 106 Acts of the General Assembly 1932, p. 537, now section 2739g-86, Baldwin's Supp. 1933. The act of 1932 of which this section is a part especially repeals all laws and parts of laws in conflict with it. Inasmuch as section 2739g-86 expressly fixes the rate of speed for operating trucks on the highway, it necessarily conflicts with the similar provision in section 2739g-51 (Ky. St. Supp. 1933).

Hopper's truck while traveling on the highway, so long as he had no knowledge of the approach of the train, and no portion of it was near, on, or over the

highway, was privileged to travel at any rate of speed so far as the train was concerned. The speed of the truck was merely a circumstance tending to establish Hopper's contributory negligence. There is no rule of law that required him to stop, look, or listen for the train. Louisville & N. R. Co. v. Ueltschi's Ex'r, 97 S. W. 14, 29 Ky. Law Rep. 1136; Cox's Adm'r v. Louisville & N. R. Co., 104 S. W. 282. 31 Ky. Law Rep. 875; Louisville & N. R. Co. v. Ratliff's Adm'r, 260 Ky. 380, 85 S. W. (2d) 1006.

The evidence showing that the fireman and engineer in charge of the train failed to and did not ring the bell or sound the whistle, after the whistle was sounded for the crossing, is neither conflicting nor disputed. The court's instructions erroneously submitted this issue to the jury. However, Hopper and R. J. Smith Company by an offered instruction invited it to do so, and having invited the error they will not now be permitted to avail themselves of it as a cause for reversal. Malone's Ex'x v. Chesapeake & O. R. Co., 249 Ky. 832, 61 S. W. (2d) 876. The "last clear chance" instruction was improperly given as a modification of another instruction.

The fireman and engineer admitted they knew of the position of peril, on the highway, of Hopper and the truck, in time by the exercise of ordinary care in the use of the means at their command to avert the collision of the truck and train of cars, and there was no evidence to the contrary.

It was the right of Hopper and R. J. Smith Company to have this theory presented under the general issue by a more appropriate instruction. Louisville & N. R. Co. v. Benke's Adm'r, 176 Ky. 259, 195 S. W. 417; Kentucky Traction & T. Co. v. Wilburn, 206 Ky. 510, 267 S. W. 1090. A party requesting it is entitled to an instruction on the "last clear chance" doctrine if authorized by the evidence. Lieberman v. McLaughlin, 233 Ky. 763, 26 S. W. (2d) 753.

The rule of ordinary care in the operation of trains on and over a highway crossing does not embrace nor anticipate a warning of danger by "hollering" to give the signal of a train's approach to a crossing.

It is not shown, nor attempted to be shown, that Hopper heard the fireman "hollering." The Barren Fork Coal Company cannot, therefore, avail itself of his "hollering," to excuse or justify its train injuring him and damaging the truck and merchandise.

The rule is in every case as to every issue arising under the pleadings, where the facts appertaining thereto are undisputed, the same becomes one of law. For a statement of this principle, see Haselden v. Home Ins. Co., 247 Ky. 530, 57 S. W. (2d) 459; Consolidation Coal Co. v. Ratliff, 217 Ky. 103, 288 S. W. 1057; Warfield Natural Gas Co. v. Muncy, 244 Ky. 213, 50 S. W. (2d) 543.

Negligence is for the court, not the jury, where the facts are undisputed and but one reasonable conclusion can be drawn therefrom by ordinary sensible men. Barret v. Ivison, 248 Ky. 243, 57 S. W. (2d) 1005; Dailey v. South Covington, & C. St. R. Co., 158 Ky. 64, 164 S. W. 361; Louisville Gas & Electric Co. v. Beaucond, 188 Ky. 725, 224 S. W. 179; Henderson Trust Co. v. Stuart, 108 Ky. 167, 168, 55 S. W. 1082, 21 Ky. Law Rep. 1664, 48 L. R. A. 49; City of Lancaster v. Walter, 80 S. W. 189, 25 Ky. Law Rep. 2189; Louisville & N. R. Co. v. Cooper, 164 Ky. 489, 175 S. W. 1034, L. R. A. 1915E, 336; Piersall's Adm'r v. Chesapeake & O. R. Co., 180 Ky. 659, 203 S. W. 551.

For instructions illustrating this principle, see Glen Falls Ins. Co. v. Hall, 259 Ky. 25, 79 S. W. (2d) 383; Black Mountain Corporation v. Partin's Adm'r, 243 Ky. 791, 49 S. W. (2d) 1014; Coral Gables v. Barnes, 247 Ky. 292, 293, 57 S. W. (2d) 18; Comer v. Shilton, 37 S. W. 155, 18 Ky. Law Rep. 517; Louisville & N. R. Co. v. Arnold, 56 S. W. 809, 22 Ky. Law Rep. 199; Owens v. Meredith, 117 Ky. 402, 78 S. W. 145, 25 Ky. Law Rep. 1485; Stanley's Adm'r v. Duvin Coal Co., 237 Ky. 813, 36 S. W. (2d) 630; Wigginton's Adm'r v. Louisville R. Co., 256 Ky. 287, 75 S. W. (2d) 1046; Spencer's Adm'r v. Fisel, 254 Ky. 503, 71 S. W. (2d) 955; City of Ludlow v. Albers, 253 Ky. 525, 69 S. W. (2d) 1051; Dolle v. Melrose Properties, 252 Ky. 482, 67 S. W. (2d) 706. But neither Hopper nor R. J. Smith Company asked for an instruction on the theory the facts were undisputed as to either of

these issues. They are not now entitled therefore to complain in this court because of its failure so to instruct the jury. Grigsby v. Grigsby, 249 Ky. 727, 61 S. W. (2d) 605.

The court always should confine its instructions to issues made in the pleadings, supported by the evidence sufficient to authorize a submission of the issues presented by the pleadings. Hess' Adm'r v. Louisville & N. R. Co., 249 Ky. 624, 61 S. W. (2d) 299. And where the facts are undisputed, the issue to which they are directed is always one of law for the court and not for the jury to determine, and instructions thereon should accordingly be given. The court in giving the instructions overlooked these familiar principles. It is very plain that the verdict of the jury is palpably against the weight of the evidence, which may be attributed to the errors in the instructions.

On another trial, if one is had, the court will instruct the jury substantially as follows: The court instructs the jury that the fireman and engineer in charge of the defendant's train having failed to exercise ordinary care in the use of the means at their command to avert the collision of the automobile and train of cars, after they discovered Hopper's position of peril, you will find for the plaintiffs, Hopper and R. J. Smith Company; unless you further believe from the evidence that after the train of cars, or some portion thereof, was in, on, or across, the highway, Hopper negligently ran the truck into or against the same, and such negligence on his part, if any, was the sole cause of his injury and damages to the truck and its contents; or if you believe from the evidence that he operated the truck so as to bring it ahead of the train of cars on the track when it was so close that they could not, by the exercise of ordinary care in the use of the means at their command, have stopped or slackened the train of cars in time to have avoided the collision, in either event, the law is for the defendant, and you will so find. Louisville R. Co. v. De Marsh, 203 Ky. 231, 262 S. W. 13, and cases therein cited. This instruction with the one defining the measure of damages, another defining the terms "negligence" and "ordinary care," and still another in-

460

forming the jury of the number of their members required to agree on a verdict if less than twelve agree on it, plainly will accord the parties, on the decisive issues made by the pleadings, a fair and impartial trial in accordance with the principles iterated herein.

Wherefore, the judgment is reversed, with directions to award a new trial and for proceedings consistent herewith.