## Owensboro City Ry. Co. v. Rowland

(Decided February 12, 1913.)

### Appeal from Daviess Circuit Court.

1. Street Railroads—Action by Motorman for Injuries Caused by Defective Brake.—Where the motorman of a street-car strains and injures himself, in attempting by the application of unusual, but necessary, force in turning and holding in place a defective brake thereof, to prevent the car from colliding with a buggy and injuring its occupants; it being made to appear from the evidence that the brake was not reasonably safe for use in controlling the car, and that the danger of using the brake, under the circumstances, was not so obvious as that the motorman must have known of it, these facts authorized the recovery by him of damages.

2. Street Railroads—Collision With Buggy—Injury to Motorman in Trying to Prevent.—In the emergency that thus confronted him, the motorman had the right to put himself in danger to prevent the death of or injury to the occupants of the buggy, and in doing so he was not guilty of contributory negligence, if he had reasonable grounds to believe the act necessary and it was done with such care as may reasonably be expected of a person of ordinary prudence under similar circumstances.

3. Master and Servant—Safe Place to Work.—The master owes to the servant the primary duty to use ordinary care to provide him a reasonably safe place to work and reasonably safe appliances with which to work; and if the servant is injured in the performance of the work, because of the master's failure to provide him a reasonably safe place to work or reasonably safe appliances with which to do the work, the master is liable, unless the danger of performing the work is so obvious that the servant must have known of it.

4. Master and Servant—When Servant May Rely on Master's Judgment.—If the work of the servant, though dangerous, is done in an emergency and by the direction of the master, or by his express command in the absence of an emergency, and the master gives the servant to understand that he does not consider the risk one that a prudent man would refuse to undertake; in such event the servant, notwithstanding his knowledge of the danger, has a right to rely on his master's judgment, unless his own is so clearly

opposed thereto that, in fact, he does not rely upon his master's opinion.

5.   Depositions—Sub-section 8 of Section 606, Civil Code—Construction of.—Sub-section 8, section 606, Civil Code, does not mean that in order to take a deposition for use in an action at law, the witness must be of a class named in section 554, Civil Code; but it applies to and authorizes the taking by either party of the deposition of the adverse party.

6.   Depositions—Refusal of Circuit Court of Order Requiring Deposition to be Taken—Continuance.—While it was error for the circuit court to refuse the order, asked by the appellant, requiring the appellee to give his deposition in this case before the trial, the error was not prejudicial to the appellant and does not authorize a reversal, as appellee testified on the trial and appellant did not ask a continuance of the case because of its failure to obtain appellee's deposition, or on the ground of surprise, or for the purpose of taking the deposition.

FUNKHOUSER & FUNKHOUSER and E. B. ANDERSON, for appellant.

BIRKHEAD & WILSON, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is an appeal from a judgment of the circuit court entered upon a verdict awarding appellee, Two hundred dollars ($200.00) damages for injuries sustained to his person, caused, as alleged, by the negligence of appellant.

It was alleged in the petition, as amended, that appellee, while in appellant's service as a motorman, was required to operate an electric car provided with defective brakes, which were insufficient to properly control the movements of the car and dangerous for use by appellee as a motorman; in that they could not be made to do their work without application of unusual strength and force on his part in turning them and holding them in place; and that appellee in applying such unusual, yet necessary force, to the brakes for the purpose of quickly stopping the car to prevent it from colliding with a buggy containing two ladies, which had suddenly been driven on the track in front of the car, so wrenched and strained his body and muscles, as to produce external and internal injuries to his person, attended and followed by great physical and mental suffering.

The answer contained a traverse and plea of contributory negligence; and the latter plea was controverted by reply.

Although numerous grounds were filed in support of

the motion for a new trial made by appellant in the circuit court, but three of them are seriously urged for a reversal. First: That the court erred in refusing a peremptory instruction as asked by appellant; Second; in admitting incompetent evidence; Third; in refusing, on appellant's motion, to grant an order requiring appellee to answer certain questions asked by appellant's counsel in an attempt to take his deposition.

In responding to the first contention consideration of the evidence will be necessary. It was, in brief, to the effect that appellee, who had been for some months employed by appellant as a motorman, was put in charge of car 43 used in carrying passengers, the brakes of which, he discovered, were not in good working order. Not being a car machinist he was unable to tell what was the trouble with the brakes, except that they did not properly control the movements of the car and, believing it to be his duty to notify his superiors of the condition of the brakes, he stopped the car in front of appellant's transfer station, notified its agent in charge of the defective condition of the brakes and requested him to call appellant's main office over the telephone and give it notice thereof. This information the transfer agent conveyed over the telephone, in his presence, and within half an hour thereafter appellant sent its agent, Hugh Brown, who had charge of the repair work of the cars while on the line, to inspect the car and brakes. Brown, after getting on the car, rode with appellee to the end of his run, and during the ride, appeared to make a thorough examination of the brakes. Brown then told appellee that the "shoes" of the brakes were worn out and that he, Brown, did not have any shoes on hand, but would immediately order them and repair the brakes within a few days. He also told appellee that he would have to continue to operate the car with the brakes in their defective condition, until the shoes could be procured and the repairs made.

'Shortly after the inspection of the brakes by Brown, appellee, in the performance of his duties as motorman, was running the car along West Main street at a reasonable rate of speed, when he discovered two ladies in a buggy about fifty or sixty feet in front of him, by the side of the track, driving in the same direction the car was going. He sounded the car gong, but, notwithstanding this warning, the two ladies suddenly turned the horse

and drove the buggy directly across the track in front of the car. Appellee at once attempted to stop the car to avoid a collision with the buggy and injury to its occupants and, in order to do so, applied to the brakes extraordinary effort and exerted all the strength he had at his command, and, in that way, succeeded in barely, stopping the car in time to prevent it from striking the buggy. He had used the reverse lever of the car without effect, and, in the emergency, which confronted him, application of the brakes in the manner indicated, afforded the only means of preventing a collision of the car with the buggy. The injuries sustained by appellee resulted from the extraordinary effort and exercise of unusual strength employed by him in stopping the car.

The facts thus far mentioned were furnished by the testimony of appellee alone; the only other witnesses introduced in his behalf being two physicians, who treated him for the injuries sustained, and whose testimony had reference only to the nature and extent of those injuries.

Several witnesses were introduced in behalf of appellant but none of them testified as to what occurred at the time appellee received his injuries. Their testimony tended to show that the brakes on the car in question, just before and about the time of the accident, were in reasonably good condition and that an inspection of them a few days after the accident, showed that such was their condition. One or more of appellant's witnesses testified as to conversations had with appellee shortly after his injuries were received, in which they said he claimed to have received his injuries in suddenly stopping the car at a crossing to let a passenger off; which conversations were denied by appellee.

The car repairer, Hugh Brown, in giving his testimony admitted it was his duty to inspect and make repairs upon appellant's cars while in service upon its lines, but denied that he had informed appellee that the brakes on car 43 were defective, or that he would, upon obtaining shoes therefor, repair the brakes. He, however, said he could not remember whether about the time of appellee's receiving his injuries, he was called upon to inspect or repair the brakes. On that subject he was asked in chief:

"Q. Did he (appellee) ever say anything to you about car 43 being out of repair as to its brakes or as

to the dog or ratchet on the brakes? A. I don't know; I have had him to call my attention to brakes and call on me for brakes. I don't remember whether it was right in that month or not. I made out a report from time to time for everything that was called for. Q. Did you make out a report on this car? A. Whenever I was called on I did. Q. Do you remember whether or not you were called on for this car? A. I don't know whether I was then or not. Q. Mr. Rowland says you got on his car and rode out to the end of Crittenden street and got down underneath the car and looked at it and said it needed new shoes. State to the jury whether or not you ever had such a conversation. A. I never did tell Mr. Rowland anything of that kind. Q. Do you remember of ever being on this car with Mr. Rowland in the month of July, 1911? A. No, I do not remember it. Q. Is there anything that would refresh your memory that you know of, if you had been on this car? A. No, I don't know of anything. I don't remember being on the car. I don't remember being called on the car. I might have been; I would not say that I have not, but if I did the records would show where I was called out. I always put down the trouble; sometimes I work on four or five cars. Q. Does your trouble sheet show you were called out on that car during the month of July, 1911? A. Yes, sir. Q. I will ask you what these sheets are which I now hand you? A. They are reports on the car. Q. Go through these and see whether or not you were called out on car 43 during the month of July, 1911, in regard to the brakes or ratchet or dog. A. There is none in it. Q. Were you in the employ of the company during the month of July, 1911? A. Yes, sir. Q. Was there any other trouble man or repair man in the employ of the company during that time? A. No, sir, none at all."

On cross examination Brown was asked:

"Q. You have no recollection about riding out on the car at all with Mr. Rowland that day have you? A. I do not know what day you are speaking of. Q. The 23rd of July. A. I do not remember whether I had any call from him then or not. Q. I will ask you if on that day either about the 23rd or the 27th or thereabouts when you were riding on the car with Mr. Rowland, if you did not tell him that car 43 was a 'Jonah?' A. No, sir. Q. Did you ever repair the brakes on car 43? A. Yes, sir. I have worked on them. Q. When? A. I don't remember

just the time I worked on them. Q. It might have been about that time? A. It might have been, I was called out and took the brakes up. I would not say I did or didn't."

It will thus be seen that Brown's testimony is in many respects indefinite and, even evasive; although denying the statement as to the need of new shoes for the brakes and the promise to repair the brakes, attributed to him by appellee, he was evidently unwilling to say, and did not state, that the brakes were not defective at the time appellee was injured, or that he did not inspect them just before the accident. The testimony of appellee and Brown, as well as that of the other witnesses, was considered by the jury and they had the right to accept that of appellee as the truth of the matters in controversy. If, therefore, the verdict was based wholly upon the testimony of appellee, as it conduced to prove that his injuries were caused by the negligence of appellant in providing him with a car the brakes of which were so defective, as that they were not reasonably safe for his use in controlling the movements of the car, it is not perceived that any reason exists for our holding that the trial court erred in refusing the peremptory instruction asked by appellant.

According to appellee's evidence, appellant knew, through the inspection of its car repairer, Brown, of the defective condition of the brakes and that they were not reasonably safe for use in controlling the movements of the car; moreover, that though appellee knew of the defective condition of the brakes on the car, he did not know the character or extent of the defects, or that any danger would attend his use of them. Indeed, if, as appellee's evidence further conduced to prove, appellant's inspector and car repairer, Brown, promised appellee to repair the brakes as soon as he could procure the "shoes" and directed him to continue to operate the car with the defective brakes until repaired, but did not inform him that there would be any risk or danger to him therefrom, such promise and direction, if appellee relied on the promise, as he seems to have done, was, in effect, an assurance from the car repairer that he could, notwithstanding the defective brakes, continue to operate the car with safety to himself, at least for such time as appellant might require to repair the brakes. Phoenix Jellico Coal Co. v. Robinson, 148 Ky., 26.

As it was appellant's duty to use ordinary care to provide appellee, while serving it as motorman, with a car equipped with brakes reasonably safe for use in controlling its movements, the act of Brown, its car repairer, whose inspection of the car enabled him to discover the defects in the brakes, in directing appellee to continue to operate the car with the defective brakes until they could be repaired, without informing him of the risk or danger he would encounter in doing so, was negligence, which, as Brown with respect to his dealings with appellee was his superior and the vice principal of the appellant, is to be imputed to the latter, the master of both.

So the case we have is one in which the servant by direction of the master was operating a car with defective brakes, which, with a knowledge of the character and effect of the defects, the master had promised to repair, but the character and effect of which were unknown to the servant, who, in good faith, was relying upon the master's promise to repair, which promise the latter had not had a reasonable time to fulfill. In operating the car under these circumstances an emergency arose in which the collision of the car with a buggy and its two lady occupants became so imminent, that the servant, by reason of the defectiveness of the brakes of the car, was compelled to exert such unusual strength and force in turning and holding them, in order to prevent the collision and save human life, that he badly strained and injured himself. It must be taken for granted that the meaning of the verdict is, that, in the opinion of the jury, such a state of case as we have indicated, was presented by the evidence heard by them. One placed in such a situation as was the appellee, may put himself in danger to save the lives of others, without being guilty of contributory negligence, if he has reasonable grounds to believe the act necessary, and it be done with such care as may be reasonably expected of a person of ordinary prudence under similar circumstances.

In Chesapeake & Ohio Railway Company v. Lang's Admr., 135 Ky., 76, we said:

"A person may lawfully imperil his life to protect the lives of the persons on a train. In view of the third instruction, the court will tell the jury that if they believe from the evidence that Lang jumped from the trycycle, and when he was at a point of safety, with knowledge of the approach of the train, undertook to take

the tricycle off the track and thus lost his life, he took the risk and the defendant is not liable, unless he had reason to believe that the tricycle endangered the train, and he used such care as may be reasonably expected of a person of ordinary prudence situated as he was.''

The doctrine announced in the case, supra, was applied in Becker v. L. & N. R. R. Co., 110 Ky., 474; and in Barber v. Cinti., N. O. & T. P. Ry. Co., 21 S. W., 340, and we are aware of no decision of this court in which the holding has been otherwise.

The record furnishes no evidence of contributory negligence. There was no showing of a failure on the part of appellee to use such care for his safety as would be expected of a person of ordinary prudence situated as he was at the time of receiving his injuries. Nor was there any evidence that the danger to him of continuing to operate the car, with its defective brakes, was so obvious, that he ought to have realized it and refused to operate the car; and when told by appellant's car repairer to continue its operation with the defective brakes until he could obtain the necessary material and repair them, there was no intimation from the car repairer that his further operation of the car would be attended with danger to him or proof that he knew of such danger. Indeed, it is highly probable that there would have been no danger to him but for such an emergency as occurred, and this danger, as well as the consequent injuries appellee sustained, was such as appellant's car repairer, and not appellee, might have anticipated and could have prevented by requiring that the car should not have been used until the brakes were repaired; therefore, it may well be said that appellee's injuries were caused by the car repairer's negligence.

As the master owes to the servant the primary duty to use ordinary care to provide him a reasonably safe place to work, and reasonably safe appliances with which to work, if the latter is injured in its performance because of the master's failure to provide him a reasonably safe place to work or reasonably safe appliances with which to do the work, the master is liable, unless the servant is charged with the duty of inspection or the danger of performing the work is so obvious as that he must have known it.

It is likewise the law that if the work of the servant, though dangerous, is done in an emergency and by the

direction of the master, or by his express command in the absence of an emergency, and the master gives the servant to understand that he does not consider the risk one that a prudent man would refuse to undertake; in such event the servant, notwithstanding his knowledge of the danger, has a right to rely upon his master's judgment, unless his own is so clearly opposed thereto that, in fact, he does not rely upon his master's opinion. Sunrise Coal Company v. McDaniel, 150 Ky., 71; Pullman Company v. Geller, 128 Ky., 72; Long's Admr. v. I. C. R. Co., 24 R., 567; L. & N. R. R. Co. v. Ward, 19 R., 1900.

Tested by any of the foregoing rules this case was one for the consideration of the jury, therefore, the refusal of the peremptory instruction by the trial court was not error.

The objection raised by appellant's second contention to the testimony of appellee, as to what was said to him by appellant's car repairer, Brown, cannot be sustained. As Brown was admittedly appellant's car repairer, and the statements he made to appellee as to the defects in the brakes, his promise to repair them and his direction to appellee to continue to run the car until the repairs were effected, were, according to the testimony of the latter, made when he inspected the car and discovered the defect in the brakes, his statements were parts of the *res gestae*, and together with the inspection itself, constituted what are known in law as verbal acts; therefore, the testimony as to such statements and the inspection was competent.

Appellant's third and final contention is one of merit. The trial court manifestly erred in refusing the order appellant asked to compel appellee to give his deposition and thereby answer certain questions asked by appellant's counsel. The right of appellant to take his deposition was conferred by sub-section 8, section 606, Civil Code, which provides:

"A party may be examined as if under cross examination at the instance of the adverse party, either orally or by deposition as any other witness; but the party calling for such examination shall not be concluded thereby, but may rebut it by counter testimony."

It is not meant by this section that in order to take a deposition for use in an action at law, the witness must be of a class named in section 554, Civil Code; but it applies to the taking by either party to the action,

of the deposition of the adverse party. This question was before us in Western Union Telegraph Co. v. Williams, 129 Ky., 518, wherein it is said:

"It is insisted by counsel for appellee that the only purpose of this provision is to enable one party to get the benefit of the testimony of the adverse party at the trial; that, therefore, if the adverse party whose deposition the other party sought to take actually appears at the trial and testifies, and subjects himself to cross-examination, the party seeking his deposition cannot complain because he failed to take it. While this view appears plausible, the Code itself does not place any such restriction upon the right of one taking the deposition of the adverse party. It gives to one party the absolute right to take the deposition of the adverse party as that of any other witness. It appears that appellee, whose deposition it was sought to take, lived more than 20 miles from the county seat where the trial was to take place, and, in addition to this, he was a practicing physician. If, then, he were a witness other than the plaintiff in the case, appellant would have had the right to take his deposition. That being the case it necessarily follows that under sub-section 8 of section 606, the appellant had the right to take his deposition."

We do not, however, agree with appellant's counsel that the error of the court in question authorized a reversal of the judgment appealed from. It is not made to appear that the error was prejudicial. Appellee testified on the trial, and appellant did not ask a continuance of the case on the ground of surprise or because of its failure to obtain appellee's deposition in advance of the trial; nor was it claimed that by reason of such failure it was prevented from preparing or making its defense.

We do not understand that the instructions are objected to; at any rate as a whole they fairly gave all the law of the case.

The amount of the verdict is small. It is not altogether apparent from the evidence that appellee's injuries will cause any permanent disability, but they were sufficient to keep him from work for several months and cause great pain and suffering.

Judgment affirmed.