**Paul L. HINES, Plaintiff,**

v.

**Reginald A. WILKINSON,
et al., Defendants.**

No. C2–92–668.

United States District Court,
S.D. Ohio,
Eastern Division.

Aug. 28, 1995.

E. Spencer Stewart, Baker & Hostetler, Columbus, Ohio, for Paul L. Hines.

Timothy J. Mangan, William J. McGinnis, Federal Litigation, Columbus, Ohio, for Defendants.

## OPINION AND ORDER

KEMP, United States Magistrate Judge.

This prisoner civil rights case is set for trial on September 5, 1995. It is a consent

case. *See* 28 U.S.C. § 636(c). The matter is now before the Court for a ruling on defendants' motion, made pursuant to Fed. R.Civ.P. 26(c)(5), to exclude plaintiff, Paul Hines, from attending personally certain depositions which have been scheduled in this case. For the following reasons, the motion for a protective order will be denied.

## I.

As more fully set forth in prior orders of this court and in an order issued by the Court of Appeals on August 10, 1994, the claim upon which Hines is proceeding to trial relates to his failure to receive certain medication for a number of days while he was confined in disciplinary segregation at the Chillicothe Correctional Institution. Essentially, he asserts that the delay by various prison officials, including nurses, guards, and pharmacy personnel, in refilling a prescription for pain medication and the failure to deliver the prescription, once it was refilled, to his cell in the segregation unit, constituted deliberate indifference to a serious medical need and therefore violated the Eighth Amendment to the United States Constitution. This Court's initial grant of summary judgment to the defendants on that claim was reversed by the Court of Appeals, and a subsequent summary judgment motion has been denied on grounds that there is a triable Eighth Amendment issue present in this case.

At a final pretrial conference conducted on August 22, 1995, the parties advised the Court that they had agreed that certain witnesses to be called by the defendants at trial would be deposed by the plaintiff. The depositions were originally scheduled for Monday, August 27, 1995, at the Chillicothe Correctional Institution. Defendants, however, objected to Hines' personal attendance at the depositions. Rather, they proposed that he be made available to consult with his attorney at various times during the course of the depositions in order to assist the attorney in deposing the witnesses. They acknowledged that they had no specific reason to believe that Hines would pose a threat to the safety of any person at the deposition, but asserted that permitting an inmate to attend a deposi-

tion and to participate, through counsel, in the questioning of an authority figure would sufficiently upset the balance of power essential to the appropriate function of the institution and thereby pose a general threat to the safety of the prison.

It was suggested to defendants' counsel at the pretrial conference that, to the extent that defendants were concerned about either specific threats to the safety of individuals or to the more general concern over the role reversal involved in having a prisoner participate in the deposition of a prison official, those concerns could be ameliorated either by having additional authority figures present during the deposition, by having the prisoner advised that the Court was available by telephone to address any misconduct which might occur, or by holding the deposition at the federal courthouse in a courtroom adjacent to the Magistrate Judge's chambers. Counsel agreed to ask the defendants to consider these alternatives and to advise the Court by August 23, 1995, if the depositions could proceed in one of those ways. In a conference call held that day, defendants reiterated their insistence that Hines not attend these depositions under any circumstances.

In accordance with the Court's suggestion, defendants then filed a motion for a protective order under Fed.R.Civ.P. 26(c)(5). Hines was given the opportunity to file a responsive memorandum, which he did on August 28, 1995, and the depositions were postponed from August 28, 1995 to August 31, 1995, in order to give the Court an opportunity to consider the matter and, if an adverse ruling were issued, to give the defendants an opportunity to seek a stay of that ruling. All briefs have now been filed, and the matter is ripe for decision.

## II.

The only factual record before the Court consists of affidavits submitted in connection with another prisoner civil rights case pending in the Western Division of this Court. A similar issue arose in that case, which is captioned *Jokova James v. Lee F. Roberts, et al.,* 163 F.R.D. 260 (S.D.Ohio 1995). In that case, the plaintiff filed a motion to compel his

attendance at certain depositions. The motion was denied by Magistrate Judge Steinberg, whose order was then reversed by District Judge Spiegel. The defendants then filed a petition for a writ of mandamus. As a part of their motion in this case, defendants have submitted the record of pertinent proceedings in *James v. Roberts*, including the affidavits submitted in support of the contention that prisoner attendance at depositions poses an unacceptable risk to institutional security.

Essentially, those affidavits state the following. First, they recite the fact that order within a prison is a very difficult thing to maintain, and that given the large discrepancy between the number of authority figures and the number of prisoners, an atmosphere of authority is essential to the maintenance of order. The affidavits further state that, in the opinion of the affiants, any activity which disrupts, even temporarily, the ordinary authority relationship between prison officials and prisoners poses a threat to the security of the institution. Based upon those two premises, the affidavits conclude that the presence of any prisoner at a deposition of prison officials carries with it an unacceptable risk to the security of the prison, not simply because it permits a prisoner to be in a setting where violent activity may more easily be engaged in, but also because it reverses the authority roles of the prisoner and the prisonkeepers and therefore makes management of the prison more difficult.

It appears, from a review of the record in the *James v. Roberts* case, that prison officials also had some particularized concerns about James' propensity to violence. He is confined at the Southern Ohio Correctional Facility, a maximum security prison which is reserved for the most violent and uncontrollable offenders within the Ohio prison system, and he had made a number of threatening statements during the course of his criminal proceedings. Defendants have made no similar showing with respect to Plaintiff Hines, and concede that there is no information in this case which would suggest that Hines, if permitted to attend these depositions, would present a greater risk to the prison system than would the typical medium-security inmate. Rather, the defendants rely exclusively upon the more general proposition that the attendance of any prisoner at a deposition presents an unacceptable security risk.

Plaintiff argues, as a factual matter, that his attendance at these depositions is not only presumptively useful to his counsel, but actually useful. The Court takes note of the fact that counsel in this case, who has been appointed by the Court to represent Hines pursuant to 28 U.S.C. § 1915(d), has not represented a plaintiff in a prisoner § 1983 action in the past. Additionally, at the pretrial conference and by way of the memorandum and affidavit filed August 28, 1995, Hines' counsel provided specific examples of matters which would be exclusively within Hines' knowledge but which might pertain to information revealed during these depositions. The Court presumes that it would be, at a minimum, more convenient and efficient to have Hines personally present during the questioning than to have counsel interrupt the depositions for occasional conferences with Hines, during which counsel would be forced to summarize the testimony and seek guidance from Hines as to additional areas of inquiry. The Court further presumes that such a procedure would increase the risk that relevant lines of questioning would not be pursued because of the qualitative difference between Hines' ability to acquire and to process information through personal attendance at the deposition and his ability to respond to counsel's summary of that information. It is against this factual background that the instant motion must be decided.

### III.

▇  The Court begins its analysis by examining the nature of Hines' interest in attending these depositions. Although the due process clause does not guarantee an absolute right to a civil litigant to be present personally at a trial, "a court may not exclude arbitrarily a party who desires to be present merely because he is represented by counsel." *Helminski v. Ayerst Lab.*, 766 F.2d 208, 213 (6th Cir.), *cert. denied*, 474 U.S. 981, 106 S.Ct. 386, 88 L.Ed.2d 339 (1985). The involuntary exclusion of a party from

trial is only justified under particularized circumstances that comport with due process. *Id.* at 214–16. Courts have considered depositions to be part of the trial. *E.g., Helfferich v. Farley,* 36 Conn.Supp. 333, 419 A.2d 913, 914 (1980). This is supported by the fact that under certain circumstances, the deposition itself may be introduced as evidence at trial. *Id. See also Collins v. Francis,* 728 F.2d 1322, 1346 (11th Cir.), *cert. denied,* 469 U.S. 963, 105 S.Ct. 361, 83 L.Ed.2d 297 (1984), ("Courts try all sorts of cases on the basis of depositions. A court's subpoena power is limited and witnesses are often unavailable."). For example, this could occur if a deponent moves out of state or dies before the trial date. Thus, although the Court concludes, as more fully set forth below, that the applicable rule of procedure, Fed.R.Civ.P. 26(c)(5), provides an appropriate analytical tool for resolving the pending motion, the Court must keep in mind the constitutional dimension of a party's entitlement to be present at the trial of a civil case.

Fed.R.Civ.P. 26(c) states that

Upon motion of a party … and for good cause shown, the Court … may make any order which justice requires to protect a person or party from annoyance, embarrassment, oppression, or undue burden or expense including …

(5) that discovery be conducted with no one present exception persons designated by the court.

Obviously, the Rule's incorporation of the concept of "good cause" implies that a flexible approach to protective orders may be taken, depending upon the nature of the interests sought to be protected and the interests that a protective order would infringe. Thus, for example, factors that might justify exclusion of non-parties from a deposition might not be sufficient to exclude parties because of the parties' more substantial interest in being present. In fact, that is how the Rule has been interpreted.

Under Rule 26(c)(5), the courts may exclude a party from a deposition only in "extraordinary circumstances." 8 C.A. Wright, A.R. Miller, and R.L. Marcus, *Federal Practice & Procedure,* § 2041 at 536 (1994). *See also Galella v. Onassis,* 487 F.2d 986, 997 (2d Cir.1973) (finding that "the Court has the power to exclude even a party, although such an exclusion should be ordered rarely indeed"). That standard is fully consistent with the notion that a party's right to attend a deposition has a constitutional dimension and is therefore entitled to special protection. *Cf.; Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (no First Amendment right of media to be physically present at a deposition).

Not surprisingly, given a party's strong interest in attending a deposition, those courts that have considered this issue have required a particular and individualized showing of good cause before granting such a motion. In fact, this Court has failed to find any case which engaged in a detailed analysis of this issue that did not consider the specific circumstances of the parties and the issues involved in analyzing a motion to exclude a party from a deposition. *E.g., Hamon Contrs., Inc. v. District Court,* 877 P.2d 884, 887 (Colo.1994) (finding the exclusion of a party from a pretrial deposition is only permitted rarely and under extraordinary circumstances); *Galella, supra,* at 997 (excluding a party on the finding there was cause to believe he would harass the deponent and he had demonstrated a complete disregard for the judicial process); *BCI Commun. Sys., Inc. v. Bell Atlanticom Sys., Inc.,* 112 F.R.D. 154, 157 (N.D.Ala.1986) (finding there must be a proper showing to exclude a party from a deposition and that this should be a rare event); *In re Levine,* 101 B.R. 260, 262–63 (D.Colo.1989) (allowing exclusion of parties from each other's depositions under "rather extraordinary" circumstances); *Montgomery Elevator Company v. Superior Court,* 135 Ariz. 432, 661 P.2d 1133, 1135 (1983) (finding in "unusual situations" it would be appropriate to exclude a party from depositions); *Beacon v. R.M. Jones Apartment Rentals,* 79 F.R.D. 141, 142 (N.D.Ohio 1978) (finding, under particular circumstances which involved "subtle and sophisticated questions," good cause existed to exclude parties to the suit from attendance at a deposition).

It can be argued, however, that because certain factors are common to all prisoner cases (i.e. the fact of incarceration

and the need for prison security), only a generalized showing of need can be made and that such a showing is sufficient. A showing of exceptional circumstances in prisoner litigation certainly involves an examination of general security issues which are of legitimate concern to prison officials. *See Holt v. Pitts*, 619 F.2d 558 (6th Cir.1980), *aff'd*, 702 F.2d 639 (6th Cir.1983). However, a generalized security concern is merely one relevant factor in considering whether to exclude a prisoner-litigant from attendance at a deposition. Other relevant factors include where the deposition will take place, the security issues involved in transporting a prisoner, the importance of the deponent, and the prisoner's individual security history. *See Holt, supra,* at 561; *cf., Collins, supra,* at 1345 (considering similar factors in finding no prejudice in a state court's denial of a death row inmate's request to be present at depositions scheduled outside the prison). *See also James v. Roberts,* 163 F.R.D. 260 (S.D.Ohio, 6–13–95) (Spiegel, J.). Still other factors might include the identity of the deponent, the presence of adequate prison authority figures, the availability of the Court to resolve disputes during the deposition, and the ability of the prison staff to terminate the depositions or to remove the prisoner if he or she becomes unruly or disruptive. Given the flexible nature of protective orders, the Court is entitled, if not obligated, to consider whether an appropriate order could issue that would allow the prisoner to attend the depositions while assuaging defendants' concerns about prison security. It is with these legal standards in mind that the Court now evaluates defendants' motion.

## IV.

■ Applying the above case law to the instant action, the Court determines that the defendants have failed to demonstrate exceptional circumstances which would entitle them to an order under Rule 26(c)(5) to exclude Hines from the scheduled depositions. The depositions are scheduled to take place at the prison, so there will be no security problem involved in transporting Hines to another location. Also, Hines is incarcerated at the Chillicothe Correctional Institution, a

medium security institution. Thus, the Ohio Department of Rehabilitation and Correction has already determined that Hines is not personally an extreme security risk. Additionally, the defendants have not suggested that Hines poses a particularized security risk with respect to this litigation. There has been no showing that he has been disruptive or antagonistic during the course of the instant suit, which has been pending for approximately three years.

■ The Court does not doubt for a moment that permitting a prisoner to confront a guard, administrator, or other prison official and to question the appropriateness of that person's action, without fear of being disciplined for insubordination or being directed to discontinue potentially embarrassing inquiries, has some ramifications for prison security. So, however, does allowing prisoners to conduct *pro se* examinations of prison officials at trial; allowing them to have a hearing on disciplinary violations; and allowing them to file lawsuits. The interests of a prisoner, like other members of society, in appropriate access to the court system, is not absolute but it is important, and the courts have an obligation to protect it. It is this Court's view that allowing a generalized concern about prison security, which applies with equal force to almost any litigation-related activity a prisoner might engage in, to support a blanket prohibition on prisoners attending depositions in their own cases, would be tantamount to an abdication of the judicial function of making individualized decisions that are based on the facts of the case before the court, and would constitute *de facto* rulemaking outside of the prescribed procedures for doing so and potentially in contravention of existing rules and procedures.

It is conceivable that a court could lay down a blanket rule concerning prisoners' entitlement to attend depositions based on the showing make by defendants in this case, and justify it as an appropriate exercise of the discretion granted under Rule 26(c)(5). This Court concludes, however, based upon the importance of the right being protected by the Rule, and the need for individualized

decision-making, that defendants simply have failed to demonstrate good cause for the protective order they seek. The Court therefore declines, as a matter of the sound exercise of its discretion, to grant defendants' motion.

The Court, at the pretrial conference, offered defendants a number of alternatives to having the depositions conducted with only the parties, counsel, the witnesses, and the court reporter present. Defendants have not requested, as an alternative, an order incorporating any of these protections. The Court will thus not order them *sua sponte,* but will consider (if the parties cannot reach some agreement) an oral application for various protective measures that stop short of excluding Hines from the deposition room altogether.

## V.

The Court turns briefly to three other arguments raised in the mandamus petition filed in *James v. Roberts* and incorporated by reference in the motion filed in this case. First; the defendants assert that the Sixth Circuit "has repeatedly held that a litigant who seeks the physical presence of an incarcerated individual has the burden of proving the appropriateness of such relief." The cases cited by the defendants in support of this proposition are all inapposite to the case at bar. They involved the issuance of witness subpoenas to nonparties. The burden of proof in such cases is typically placed on the litigant to show the need to have the witness present. This inquiry is not governed by Rule 26(c)(5), and did not involve the right of a party to be present at various stages of his or her own litigation.

The defendants also argued in *James* that this Court lacked jurisdiction over James' custodians and thus could not properly order those persons to produce him for the depositions. They argued in addition that the Eleventh Amendment prevents this Court from issuing injunctive relief against a state or its agencies. These arguments would appear to ignore the Court's authority to issue discovery orders under the Federal Rules of Civil Procedure and its power to issue writs of *habeas corpus ad testificandum.* To the extent that these arguments are directed to this court, they are without merit.

## VI.

Because the Court has denied the defendants' motion for a protective order, it orders that the plaintiff, Paul L. Hines, be present during the depositions scheduled for August 31, 1995. The Court will deny Hines' request for an award of expenses incurred in opposing the motion for a protective order because the motion was substantially justified. *See* Fed.R.Civ.P. 37(a)(4)(B).

## VII.

For the foregoing reasons, the defendants' motion for a protective order, made pursuant to Fed.R.Civ.P. 26(c)(5), is DENIED. The plaintiff's motion for expenses, made pursuant to Fed.R.Civ.P. 37(a)(4)(B) is DENIED.