**UNITED STATES of America, Appellee,**

v.

**MICROSOFT CORPORATION, Appellant,**

Nos. 98–5399, 98–5400.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 20, 1998.

Decided Jan. 29, 1999.

Richard J. Urowsky argued the cause for appellant. With him on the briefs were John L. Warden, D. Stuart Meiklejohn, Thomas R. Leuba, Christopher J. Meyers, Christine M. Motta, James R. Weiss, William H. Neukom and Thomas W. Burt. David A. Heiner, Jr., Richard C. Pepperman, II, Steven J. Aeschbacher and Steven L. Holley entered appearances.

Mark S. Popofsky, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were Joel I. Klein, Assistant Attorney General, A. Douglas Melamed, Deputy Assistant Attorney General, and Catherine G. O'Sullivan, Attorney.

Lee Levine argued the cause for intervenors The New York Times Company, et al. With him on the brief were Jay Ward Brown, Richard L. Klein, Niki Kuckes and David S. Cohen.

Before: WILLIAMS, GINSBURG, and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

The Publicity in Taking Evidence Act of 1913 provides that depositions of witnesses for use in any suit in equity brought by the Government under the Sherman Act "shall be open to the public as freely as are trials in open court." 15 U.S.C. § 30. Microsoft Corporation, the defendant in such an antitrust case, appeals the district court's order requiring the depositions in this case to be taken in public, subject to provisions for the protection of trade secrets and other confidential business information. Microsoft argues that the "depositions" referred to in the statute are not the depositions known today under the Federal Rules of Civil Procedure, namely, interrogations undertaken for the purpose of pretrial discovery. In the alternative, Microsoft argues that § 30 conflicts with and is superseded by the standard for granting a protective order under Rule 26(c).

We hold that although § 30 apparently was rendered an anachronism by the Federal Rules in 1938, the statute does not conflict with, and hence is not superseded by Rule 26(c). Accordingly, we are constrained to enforce the statute by its terms and to apply it to the depositions taken in this case. We therefore affirm the judgment of the district court.

I. Background

In May, 1998 the United States filed a civil antitrust action in the district court charging Microsoft with various violations of the Sherman Act. See 15 U.S.C. §§ 1 & 2. The case was consolidated with a similar suit brought by 20 States and the District of Columbia, and the district court set the case on an expedited path to trial.

In order to protect the trade secrets and other confidential business information both of Microsoft and of third parties that might testify or otherwise provide information in the case, the parties agreed to and the district court entered a protective order governing discovery. See FED.R.CIV.P. 26(c) (authorizing entry of protective order upon showing of "good cause"). Under that protective order deposition transcripts were to be treated as confidential for five days following the deponent's receipt of the transcript, during which time the deponent might designate portions of his or her testimony confidential. After this five-day period the transcripts presumably would be made available to the public in redacted form, although the order does not expressly so state.

In August, 1998 the Government gave notice that it would take the depositions of several Microsoft employees, including its Chairman and Chief Executive Officer, William Gates III. The New York Times Company thereupon urged the district court to grant its pending motion to intervene "for the limited purpose of enforcing its and the public's rights of access to proceedings and the record herein." (Five other news organizations had joined in The Times's motion to intervene; we shall refer to the six collectively as "The Times.") In renewing its motion The Times sought access to the depositions

specifically pursuant to the Publicity in Taking Evidence Act of 1913, 15 U.S.C. § 30, a little-known and even less used statute that provides in its entirety:

In the taking of depositions of witnesses for use in any suit in equity brought by the United States under sections 1 to 7 of [Title 15, United States Code], and in the hearings before any examiner or special master appointed to take testimony therein, the proceedings shall be open to the public as freely as are trials in open court; and no order excluding the public from attendance on any such proceedings shall be valid or enforceable.

The district court granted The Times's motion to intervene and pursuant to § 30 ordered "that intervenors and all other members of the public shall be admitted to all depositions to be taken henceforth in this action ... to the extent space is reasonably available to accommodate them consistent with public safety and order." The court stayed all depositions in the case pending entry of "an agreed form of order establishing a protocol for affording access for intervenors and other members of the public to pretrial depositions which comports with 15 U.S.C. § 30, but which also protects the interests of the parties and of third-party deponents in preventing unnecessary disclosure of trade secrets or other confidential information."

Microsoft immediately moved for a stay of this order, which the district court denied. Microsoft then filed an interlocutory appeal and moved this court for a stay of the order pending appeal. We granted the stay; if The Times prevails, we said, then "the text and videotape of a private deposition can then be disclosed." Depositions resumed under the terms of the original protective order, and Mr. Gates was duly deposed for three days in a private, videotaped session. The Government joins The Times on this appeal in arguing that § 30 requires that the depositions be made public.

## II. Analysis

As mentioned, Microsoft argues first that the term "depositions" as used in 15 U.S.C. § 30 does not include depositions taken for the purpose of pretrial discovery. If such depositions are covered by § 30, then Microsoft argues in the alternative that the statute conflicts with and, pursuant to the Rules Enabling Act, 28 U.S.C. § 2072(b), yields to the standard for granting a protective order in Rule 26(c).

## A. The Meaning of "Deposition" in the Act of 1913

Microsoft contends first that the term "deposition" as used by the Congress in 1913 had a completely different meaning than it has today, indeed that § 30 cannot have been intended to apply to pretrial discovery depositions because they were unknown in 1913. In modern federal practice, of course, the use of pretrial depositions for the discovery of evidence is the norm. See FED.R.CIV.P. 26(b)(1) (authorizing depositions in order to discover information that may or may not be admissible at trial but is "reasonably calculated to lead to the discovery of admissible evidence"). Microsoft claims, however, that before the Federal Rules of Civil Procedure became effective in 1938, depositions were solely a means of preserving proof, or testimony, for possible use by the court if the witness were to die or be otherwise unavailable at the trial; any discovery that might have resulted from taking a deposition "was only accidental and incidental." See CHARLES A. WRIGHT ET AL., 8 FEDERAL PRACTICE AND PROCEDURE 2D § 2002, at 52 (1994).

We agree with Microsoft's fundamental point that we must construe the term "deposition" in accordance with its ordinary meaning when the statute was enacted in 1913, for we must presume the "Congress intended the [word] to have the meaning generally accepted in the legal community at the time of enactment." Director, Office of Workers' Comp. Programs v. Greenwich Collieries, 512 U.S. 267, 275, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994) (examining historical sources to determine meaning of "burden of proof" as used in Administrative Procedure Act of 1946). Unlike Microsoft, however, we conclude that "deposition" had the same meaning in 1913 as it has now—the pretrial examination of a witness in which testimony is given under oath pursuant to a process

authorized by law; it is only the use to which a deposition may be put in federal court that has changed.

The legal treatises and dictionaries of the day reveal that the term deposition generically

> embrace[d] all written evidence verified by oath, including affidavits. But as a word of legal terminology it [was] usually limited to the testimony of a witness, taken in writing, under oath or affirmation, before some judicial officer, in answer to interrogatories, oral or written.

18 C.J. DEPOSITIONS § 1, at 605 (1919) (citing, *inter alia, Eriksson v. Grandfield,* 193 F. 296 (1912)); *see* WILLIAM MACK, 13 CYCLOPEDIA OF LAW AND PROCEDURE 832 (1904) (same). Microsoft contends, nonetheless, that in the legal community of 1913 the term could not have been used to denote the pretrial examination of a witness for the purpose of discovery, "because there were no such depositions in 1913, when the statute was enacted." In support of this argument Microsoft points to the differences between the definitions found in the 1910 and 1990 editions of Black's Law Dictionary. In the later edition, a deposition is defined as

> testimony of a witness taken upon oral question or written interrogatories, not in open court, but in pursuance of a commission to take testimony issued by a court, or under a general law or court rule on the subject, and reduced to writing and duly authenticated, and intended to be used *in preparation and* upon the trial of a civil action or criminal prosecution.

BLACK'S LAW DICTIONARY 440 (6th ed.1990) (emphasis added). The 1910 edition of Black's is identical in relevant part except that it does not contain the phrase italicized above. *See* BLACK'S LAW DICTIONARY 357 (2d ed.1910). "The omission is not surprising," claims Microsoft, "given that discovery depositions did not exist at the time."

Contrary to the inference that Microsoft would have us draw from these contrasting definitions, however, deposing a party or a witness for the purpose of pretrial discovery

was far from unknown in 1913; for several decades it had been permitted to some extent by statute in at least six states. Although the statutes in question may have been directed originally at the taking of depositions in order to preserve testimony for use at trial, courts construed them also to permit the use of depositions for pretrial discovery. *See In re Abeles,* 12 Kan. 451, 453 (1874) (Brewer, J.) (pretrial deposition may be taken regardless whether conditions for use at trial then obtain; though it is "said that this permits one to go on a 'fishing expedition' to ascertain his adversary's testimony . . . . [t]his is an equal right of both parties, and justice will not be apt to suffer if each party knows fully beforehand his adversary's testimony"); *Kelley v. Chicago & N.W. Ry. Co.,* 60 Wis. 480, 19 N.W. 521, 525 (Wis. 1884) ("the object of our statute . . . is to elicit a full and complete disclosure of whatever may be relevant to the controversy" by permitting either party to compel deposition of witnesses before trial); *Dogge v. State,* 21 Neb. 272, 31 N.W. 929, 931–32 (Neb. 1887) (same); *Shaw v. Ohio Edison Installation Co.,* 9 Ohio Dec. 809, 811–12 (1887) (Taft, J.)* (rejecting argument that under statute granting absolute right to take pretrial depositions "a party will go fishing for evidence among the witnesses of the opposing party, and will learn the case of his adversary . . . . There is no objection that I know, why each party should not know the other's case"); *Herbage v. City of Utica,* 109 N.Y. 81, 16 N.E. 62, 63 (N.Y. 1888) ("a party litigant may . . . have a general examination of his adversary as a witness in the cause, as well before as at the trial"); *Olmsted v. Edson,* 71 Neb. 17, 98 N.W. 415, 417 (Neb.1904) (holding statute governing evidentiary use of depositions "is not a limitation of the right to take depositions, but on the right to use them on the trial of the case [and] it is not essential that the reasons which permit their use at the trial should exist when they are taken"); *Goldmark v. United States Electro–Galvanizing Co.,* 111 A.D. 526, 97 N.Y.S. 1078, 1080 (N.Y.App.Div.1906) ("The object [of a

---

* Interestingly, it was President Taft whose Administration proposed the Publicity in Taking Evidence Act of 1913 and who signed it into law.

deposition] is to obtain testimony of an adverse party before the trial so that it can be used at the trial.... [U]ntil the deposition is taken ... a party cannot tell whether the evidence of the proposed witness would be sufficient to prove the particular facts desired to be proved, or whether he must procure other evidence of the fact"); *Western Union Tel. Co. v. Williams,* 129 Ky. 515, 112 S.W. 651, 653 (Ky.1908) (explaining that statute "gives to one party the absolute right to take the deposition of the adverse party ... [thus] enabl[ing] the party to find out his opponent's evidence in advance of the trial"); *Owensboro City Ry. Co. v. Rowland,* 152 Ky. 175, 153 S.W. 206, 210–11 (Ky.1913) (same); *Kentucky Util. Co. v. McCarty's Adm'r,* 169 Ky. 38, 183 S.W. 237, 240 (Ky.1916) (same; explaining that "Code confers the right on either party to take the deposition of the adverse party, not merely for use as evidence if the necessary conditions arise, but for the purpose of exploration, or of ascertaining the facts on which the adverse party relies").

Under the Conformity Act of 1872, Act of June 1, 1872, ch. 255, § 5, 17 Stat. 196, 197 (codified in Rev. Stat. § 914 (1878)), federal courts hearing cases within either their removal or their diversity jurisdiction were bound to "conform, as near as may be" to the procedures followed in the correlative state court. Consequently, the Supreme Court had occasion squarely to address the uses to which the pretrial examination of a witness could be put in both federal and state courts. In so doing, the Court consistently used the term "deposition" to describe a pretrial examination even when made for the purpose of discovery.

Consider *Ex Parte Fisk,* 113 U.S. 713, 5 S.Ct. 724, 28 L.Ed. 1117 (1885), in which the plaintiff had originally filed suit in state court in New York. Before removal of the case to federal court the plaintiff had obtained an order pursuant to the New York Code of Civil Procedure that the defendant "be examined and his testimony and deposition be taken as a party before trial." *Id.* at 714, 5 S.Ct. 724. After removing the case to federal court the defendant asserted that the order of the state court could not be enforced. The Supreme Court agreed, *see id.* at 719–

25, 5 S.Ct. 724, holding that the New York statute conflicted with Rev. Stat. § 861 (1878), which established the general rule in federal courts that the "mode of proof, in the trial of actions at common law, shall be by oral testimony and examination of witnesses in open court," subject to two exceptions. First, the "testimony of any witness [could] be taken ... by *deposition de bene esse,*" that is, in order to preserve the testimony of a witness who was expected to be unavailable at trial because he was aged, infirm, or lived beyond the subpoena power of the court. Rev. Stat. § 863 (1878) (emphasis added). Second, when necessary in the interest of justice a federal court could grant a *"dedimus potestatem,"* that is, could commission someone "to take *depositions* according to common usage." Rev. Stat. § 866 (1878) (emphasis added). The plaintiff urged that the second exception applied because the "common usage" in New York was to depose parties in advance of trial, but the Court held that the federal statute did not incorporate a discovery practice that was "dependent wholly upon the New York statute" and therefore not common. *Fisk,* 113 U.S. at 724, 5 S.Ct. 724.

The Supreme Court relied upon *Fisk* in *Union Pac. Ry. Co. v. Botsford,* 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1891), where it rejected the defendant's attempt to subject the plaintiff to a pretrial medical examination. The Court explained that because the Revised Statutes set out the exclusive authority "for taking *depositions,*" *id.* at 256, 11 S.Ct. 1000 (emphasis added), a federal court could not follow the procedure "in the nature of discovery, conducted in accordance with the practice prevailing in New York," *id.* at 257, 11 S.Ct. 1000.

Finally, in 1904 the Supreme Court summed up this line of cases as standing for the proposition that "the courts of the United States are not given discretion to take *depositions* not authorized by Federal law, but, in respect of *depositions* thereby authorized to be taken, they may follow the Federal practice in the manner of taking, or that provided by the state law." *Hanks Dental Assoc. v. International Tooth Crown Co.,* 194 U.S. 303, 309, 24 S.Ct. 700, 48 L.Ed. 989 (1904)

(emphases added); *see also Turner v. Shackman*, 27 F. 183, 184 (C.C.E.D.Mo.1886) (following *Fisk*, rejecting attempt to take deposition *dedimus potestatem* because it was "an effort to see what the defendant will testify to before he is put upon the witness stand in presence of the jury"); *cf. Evans v. Eaton*, 20 U.S. (7 Wheat.) 356, 426, 5 L.Ed. 472 (1822) (refusing "to allow a deposition to be read by the plaintiff, which had been taken according to a prevalent practice of the state courts").

In sum, the Court held that federal statutes generally prohibited, in federal litigation, the pretrial examination of a witness for the purpose of discovery even when that practice was followed in the relevant state court. The Court did not suggest, however, that a pretrial examination for the purpose of discovery was anything other than the taking of a "deposition." Clearly, therefore, in the intervening years, there has been a change not in the denotation of the word "deposition" but in the use to which the thing denoted by that word may be put in the federal courts. Accordingly, we conclude that the ordinary meaning of the term "deposition" as used by the legal community in 1913 was the pretrial examination of a witness in which testimony is given under oath pursuant to a process authorized by law. Therefore we hold that the depositions taken in the case before us fall within the plain meaning of the term "deposition" as it is used in the Publicity in Taking Evidence Act of 1913, 15 U.S.C. § 30.

■ Microsoft next contends, in part by quoting Professor Richard L. Marcus, that the 62d Congress could not have intended in enacting § 30 "to ensure public access to genuine discovery depositions, which were not generally available in 1913." *Myth and Reality in Protective Order Litigation*, 69 CORNELL L.REV. 1, 39 (1983); *see also* WRIGHT, 8 FEDERAL PRACTICE AND PROCEDURE 2D § 2041, at 539. At that time the common practice in civil antitrust cases brought by the Government for equitable relief was for an examiner (or special master) to travel the country for some months before trial taking evidence. He then would submit to the court a report consisting of proposed findings of fact and conclusions of law, to which the parties could take exceptions. At trial the court would rule upon the exceptions and either accept or reject the examiner's findings and conclusions. The typical case would thus be decided upon a written record, with the only oral testimony in the case having been given before the examiner and not in open court. Although the antitrust court could in its discretion permit testimony at trial, it seldom if ever did so. This was in accord with the general practice at that time "to try all equity causes on depositions." 18 C.J. DEPOSITIONS § 3, at 607 (1919); *see* EQUITY R. 67, 210 U.S. 508, 530–33 (1907); EARL W. KINTNER, 8 LEGISLATIVE HISTORY OF THE FEDERAL ANTITRUST LAWS AND RELATED STATUTES 6373, 6376 (1984) (editor's introduction).

In 1912 a district court in a Sherman Act case had held that Equity Rule 67 prohibited the public and the press from attending as an examiner took evidence: "[O]ral proceedings before an examiner are regarded as essentially different from proceedings in open court.... That the public and press should be entitled to hear what is not yet evidence and what may never become evidence before the court which is to try the case hears it is an unprecedented and unreasonable proposition." *United States v. United Shoe Mach. Co.*, 198 F. 870, 874–75 (D.Mass.1912).

The Equity Rules were revised that same year, the major change being that all testimony was to be received orally in open court (thus bringing actions in equity into alignment with actions at law, *see* Rev. Stat. § 861 (1878)). *See* EQUITY R. 46, 226 U.S. 627, 661 (1912). Both the taking of a deposition and reference to an examiner were to be permitted only in "exceptional" cases. EQUITY R. 47 & 59, 226 U.S. at 661–62, 666; KINTNER, 8 LEG. HIST. at 6377.

Nonetheless, the Taft Administration recommended that the Congress enact what became § 30. As Attorney General George Wickersham explained, due to the complicated nature of cases brought under the Sherman Act, the use of examiners to take testimony out of court would remain the practice "in almost all [such] cases." ANNUAL REP. OF THE ATT'Y GEN. 22 (1912), *reprinted in* KINTNER, 8 LEG. HIST. at 6392. In view of the

district court's decision in *United Shoe*, which the Attorney General contended was wrongly decided, and the lack of provision in the new Equity Rules for public depositions, the Attorney General argued that a statute was necessary to guarantee that the public, "the real parties to the suit," would have access to the only live testimony likely to be given in the case. *Id.* He also noted that "newspaper reports of evidence given in the examination of witnesses often lead to persons having knowledge of the facts furnishing the Government with valuable evidence bearing upon the questions in dispute which otherwise would not be discovered." *Id.* The ensuing legislative debates focused upon the same considerations. *See* KINTNER, 8 LEG. HIST. at 6393–6408.

From this bit of history behind the enactment of § 30, Microsoft argues the Congress did not "imagine in 1913 that as a precursor to the public trial there would be extensive pretrial discovery depositions." That is most likely true, but "it is no bar to interpreting a statute as applicable that 'the question which is raised on the statute never occurred to the legislature.'" *Eastern Air Lines, Inc. v. CAB*, 354 F.2d 507, 511 (D.C.Cir.1965) (quoting BENJAMIN CARDOZO, THE NATURE OF THE JUDICIAL PROCESS 15 (1921)). As the Supreme Court has said, "it is not, and cannot be, our practice to restrict the unqualified language of a statute to the particular evil that Congress was trying to remedy." *Brogan v. United States*, 522 U.S. 398, 118 S.Ct. 805, 809, 139 L.Ed.2d 830 (1998).

We do not disagree with Microsoft's claim that the reason originally underlying the statute has for the most part vanished: "the Federal Rules [now] insure ... public access to the taking of evidence at civil antitrust trials." To be sure, depositions may still be used as evidence at trial under the Federal Rules, *see* Rules 32, "Use of Depositions in Court Proceedings," and 26(a)(3)(B) (requiring "designation of those witnesses whose testimony is expected to be presented by means of a deposition"); indeed portions of Mr. Gates's videotaped deposition have been entered into evidence in the trial of this case. But such use in an equitable action brought by the Government under the Sherman Act is as much the exception now as it was the rule in 1913.

Still, this is not one of those "rare cases [in which] literal application of a statute ... would thwart the obvious purpose of the statute." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) (rejecting argument court should have discretion to limit recovery period under statute entitling seaman to double wages for each day payment delayed, both to compensate seaman and to deter nonpayment, where result is award of more than $300,000 for $412 claim). The statutory purpose of disclosure is at least somewhat furthered, and by no means is it thwarted, when a deposition is taken in public.

Accordingly, we hold that a deposition taken in pretrial discovery in an antitrust case brought by the Government seeking injunctive relief is subject to 15 U.S.C. § 30. Like Tithonus, to whom Zeus gave eternal life but not eternal youth, § 30 may well be with us longer than most anyone would wish. In our system of separated powers, however, it is for the Congress, not the courts, to jettison outdated statutes.**

### B. Was § 30 Superseded by Rule 26(c)?

■ Microsoft next contends that Rule 26(c)(5) effected a *pro tanto* repeal of § 30. When a rule of civil procedure and another statute "conflict[ ] irreconcilably," *Henderson v. United States*, 517 U.S. 654, 663, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996), the statute will be deemed superseded, pursuant to the Rules Enabling Act, unless such supersession would "abridge, enlarge, or modify [a] substantive right." 28 U.S.C. § 2072(b). Because we find no conflict between Rule 26(c) and § 30, however, we need not address whether § 30 grants a substantive right.

Rule 26(c) authorizes the district court

---

** We note that only months before this dispute arose the current Administration recommended to the Congress that § 30 be repealed. *See* Letter from Ass't Att'y Gen. Joel I. Klein to House Judiciary Comm. at 3 (Mar. 17, 1998) ("[T]he [Antitrust] Division sees no need for this type of provision. If the matter goes to trial, the trial will be public").

for good cause shown [to] make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that discovery be conducted with no one present except persons designated by the court.

At the same time, § 30 provides that depositions "shall be open to the public as freely as are trials in open court; and no order excluding the public from attendance on any such proceedings shall be valid or enforceable." According to Microsoft, these two norms conflict because, in deference to the constitutional values at stake, the standards for excluding the public from a trial are very stringent, indeed—and this is key—are more stringent than the "good cause" standard for excluding the public from a deposition under Rule 26(c). *Compare Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 581, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (plurality opinion) (holding First and Sixth amendments require that "[a]bsent an overriding interest articulated in findings, the trial of a criminal case must be open to the public"), *and id.* at 580 n. 17, 100 S.Ct. 2814 (indicating similar standard applies to civil trials), *with Seattle Times Co. v. Rhinehart* 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (Rule 26(c), "requires, in itself, no heightened First Amendment scrutiny"). The Times and the Government respond that there is no conflict because the "good cause" standard of Rule 26(c), properly understood, is informed by and incorporates the policy underlying § 30. *Cf. United States v. IBM,* 67 F.R.D. 40, 43 (S.D.N.Y.1975) ("a plain reading of [§ 30] indicates that if the public may be excluded during trial or if evidence may be received there in camera, the same may be possible during depositions governed by the statute"). We agree.

Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise. *See, e.g.,* Adv. Comm. Note, 28 U.S.C.App., p. 715 ("The courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure"); *Burka v. HHS,* 87 F.3d 508, 517 (D.C.Cir. 1996) (factors considered include "the re-

quester's need for the information from this particular source, its relevance to the litigation at hand, the burden of producing the sought-after material, and the harm which disclosure would cause to the party seeking to protect the information"); *Hines v. Wilkinson,* 163 F.R.D. 262, 266 (S.D.Ohio 1995) ("the Rule's incorporation of the concept of 'good cause' implies that a flexible approach to protective orders may be taken, depending upon the nature of the interests sought to be protected and the interests that a protective order would infringe"); *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.,* 106 F.R.D. 551, 556 (S.D.N.Y.1985) (assessing interests of third party state governments that had subpoenaed from plaintiff documents plaintiff had obtained from defendant in discovery subject to protective order); WRIGHT, 8 FEDERAL PRACTICE AND PROCEDURE 2D § 2036, at 484–86 ("the existence of good cause for a protective order is a factual matter to be determined ·from the nature and character of the information sought ... weighed in the balance of the factual issues involved in each action"). Rather than conflicting with the rule, therefore, § 30 provides one of the interests to be weighed under it in assessing Microsoft's need for a protective order upon the particular facts of this case.

We have previously held that the meaning of "good cause" in Rule 26(c) is properly informed by the interests underlying the Privacy Act. *See Laxalt v. McClatchy,* 809 F.2d 885, 889 (D.C.Cir.1987). Similarly, as the Supreme Court explained in upholding the good cause standard against a challenge to its constitutionality as a prior restraint where a trial court entered a protective order prohibiting dissemination of information received in discovery, although "the Rule contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." *Seattle Times,* 467 U.S. at 35 n. 21, 104 S.Ct. 2199 (holding Rule 26(c) furthers a substantial government interest unrelated to suppression of expression). As we understand the Court, the good cause standard of Rule 26(c) comports with the first amendment not fortui-

tously but precisely because it takes into account all relevant interests, including those protected by the first amendment. We see no reason why that broad standard should not also be deemed, and be applied, to take into account the interests advanced by § 30.

Accordingly, we conclude that Rule 26(c) and § 30 do not conflict because the "good cause" standard in the Rule is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case. Section 30 expresses one of those interests.

### III.   Conclusion

We hold first that depositions taken for pretrial discovery are subject to the Publicity in Taking Evidence Act of 1913, 15 U.S.C. § 30.   Second, we hold that § 30 is not superseded by Rule 26(c) because it does not conflict with the standard for granting protective orders under that Rule.   Accordingly, the judgment of the district court is

*Affirmed.*